## Weber, et al. v. Lape.

(Decided December 8, 1911.)

### Appeal from Campbell Circuit Court.

1. Mechanic's Lien—Action to Enforce—Evidence.—In an action for the enforcement of a mechanic's lien, evidence examined and held sufficient to support the judgment enforcing the lien.
2. Husband and Wife—Testimony of Either in Civil Case.—In a civil case the testimony of either husband or wife, the action being against both, is necessarily the testimony of the other, and either may testify, but both cannot do so.

HORACE W. ROOT for appellant.

S. C. BAILEY and GEORGE VEITH for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By the judgment appealed from in this case the appellee, Harry N. Lape, recovered of the appellants, Albert Weber and Bertha Weber, $105, the purchase price of a Peck-Hammond house furnace they bought of him, with interest from November 4th, 1909, and costs. The judgment likewise enforced a mechanic's lien asserted in the action by appellee against a house and lot in Newport owned by appellants, in and upon which the furnace in question was installed, and directed a sale of the same in satisfaction of appellee's debt.

A recovery was resisted by appellants upon certain grounds insufficiently pleaded in an answer and counterclaim filed by them, to which a demurrer was sustained. They thereupon abandoned their counterclaim, but filed another or amended answer in which, after denying liability for the debt sued on, they, in substance, alleged that the furnace installed in their house by appellee was known as No. 836, whereas the size of the one he contracted to furnish was larger and numbered 840; that the size furnished did not and could not heat all of the rooms of the house to 70 degrees Fahrenheit as he guaranteed it would do; that upon seeing the parts of the furnace before it was erected in the house they objected to receiving it, and did not at any time thereafter accept it. Without in words saying so, the answer seemed to concede to appellee the right to remove the furnace from the house and ended with the prayer that he be allowed to "take nothing by his petition."

Following the filing of a reply controverting the affirmative matter of the answer, the case was referred to the master commissioner to take proof and report upon appellee's debt and mechanic's lien, and also such as might be filed by other persons. This duty was performed by the commissioner as required by section 2472, Kentucky Statutes, and the order of the court; his report showing that he took all the evidence introduced by appellants and appellee, and that in addition he caused a test to be made under his supervision, of the heating capacity of the furnace. The report allowed appellee's claim and lien, and notwithstanding appellant's exceptions thereto, the report was confirmed by the circuit court and judgment entered in conformity to its findings.

Appellants contend that the allowance of appellee's debt and lien by the commissioner was unauthorized by the evidence, and that the court erred in confirming the report and rendering judgment in appellee's favor. In

our opinion neither of these contentions is sustained by the record. The contract as to the sale of the furnace being in writing speaks for itself. It describes the furnace as of the size known as No. 836, and while it guarantees, that with proper attention, the furnace would heat all rooms with registers to 70 degrees Fahrenheit in the average coldest winter weather, if all outside doors and windows are properly fitted, and kept closed, and provides that appellants should have a year from the date of the installation of the furnace to test it, it further provides that appellants should notify appellee at once and before that time (i. e., the end of the year), in case of its failure to heat the building, and allow him a reasonable time to remedy the defect.

The contract reserved to appellee the privilege of full control of the location of all the apparatus, and provides that in case of any local interference with the working of same, he should have the right of adding to the apparatus, or replacing it with a larger one, or locating it differently, at his expense, to secure the best results.

As neither fraud nor mistake in the written contract is alleged, we must take it for granted that it contains all the terms and conditions of the contract as agreed upon by the parties. According to the evidence introduced in appellee's behalf, the furnace was precisely such a heating apparatus as she contracted for. It is true the appellant, Bertha Weber, testified that she saw when the furnace was taken to her house, and before it was erected, that it was smaller than the one she was to receive; but we do not understand how she could have reached such a conclusion as a comparison of the furnace with the picture of the one sold her, could have given her no information that it was smaller. Indeed, under the circumstances it was well nigh impossible for her to have had a correct conception of the actual size of the furnace she had purchased. At any rate, her mere impression that it was smaller, can not be allowed to outweigh the evidence furnished by the number stated in the contract and the testimony of appellee, that it was of the size sold her.

She also testified that upon first seeing the furnace, and on other occasions while appellee was erecting it, she and her husband objected to it, told him not to put it in place and ordered him to take it out. In view of the fact that appellee did install the furnace and of its subsequent

long use by appellants, it is scarcely believable that these objections and statements of Mrs. Weber should have been made.

One of the painters at work on the house at the time the furnace was installed, also testified that he informed appellee that Mrs. Weber did not want him to put it in the house.

Both Mrs. Weber and the witness last mentioned, were contradicted as to the statements referred to by appellee, who denied they were made. As on this point the witnesses were as two to one, it might plausibly be argued that the evidence preponderated in appellant's favor but for the acceptance of the furnace by appellants, manifested by their long use of it after it was installed.

Mrs. Weber also testified, as did one or two other witnesses, that the furnace did not properly heat the house and, in fact, could not do so in cold weather, beyond 50 or 55 degrees Fahrenheit. On the other hand appellee and Zink, the superintendent of his manufacturing plant, testified that the heating capacity of the furnace was as guaranteed in its sale, viz., 70 degrees Fahrenheit, and that it had been properly erected. The contrariety of evidence on this feature of the case might leave the mind in doubt as to whether the heating power of the furnace was as guaranteed, but for the test made by the commissioner after taking the testimony of the witnesses, which test showed the heating capacity of the furnace to be substantially as great as appellee guaranteed it to be, the temperature in the rooms ranging from 67 to 74 degrees Fahrenheit. The test was made in cold weather when there was snow and ice on the ground and housetops and after the commissinoner discovered and removed from the hot air pipe, from which the heat was conducted to all the rooms, a quantity of asbestos paper which had greatly obstructed it. The test was made with the consent of Mrs. Weber and in her presence and that of appellee, and upon its completion, inspection of the fire pot showed it to be only half full of coal.

The test thus made removed all doubt of the heating capacity of the furnace and sustains the warranty made by appellee expressed in the written contract.

It does not appear from the evidence that appellants ever complained to appellee that the furnace did not properly heat their house, or that they at any time requested him to remedy any defect in it. This the con-

tract required them to do, if it did in fact develop any defect, or fail to properly heat the house.

Appellants' use of the furnace for more than a year, and until after suit was instituted against them without complaint that it did not properly perform its work, furnishes conclusive proof of their acceptance of it and that it did properly perform its work; and even if the evidence had satisfactorily shown the furnace to be of smaller size than was contracted for by appellants, that fact, in view of their acceptance and use of it without complaint, would not release them of liability for the contract price.

Upon the facts presented by the record our conclusion is, that appellants were not entitled to have the furnace removed from the house, and are estopped to deny their liability for the price they agreed to pay for it.

We think this case is controlled by the principle announced in the cases of Bernard Leas Mnfg. Co. v. Waller, 18 Ky. Law Rep., 347; Hogan v. Tucker, 116 Ky., 918, and Arnold v. McCormick Harvesting Machine Co., 116 Ky., 508.

No claim for damages being alleged or proved by appellants, it is unnecessary to decide whether, notwithstanding their inability to require appellee to remove the furnace, they might upon such allegation and proof have recovered damages.

We find no merit in appellants' further contention that the trial court refused them a trial by jury of the issues of fact raised by the pleadings. As the enforcement of appellee's mechanic's lien necessitated the bringing of the action in equity, all questions of fact arising in the case were properly determined in equity. The statute, sections 2471 and 2472 required a reference of the case to the master commissioner, and besides, appellants did not object to the reference, nor did they demand a trial by jury of any issues out of chancery, before the commissioner's report was filed.

Appellants' final contention is that the court erred in refusing to permit the appellant, Albert Weber, to testify. In our opinion the exclusion of Weber as a witness was not error. As said in City of Covington v. Guyler, 93 Ky., 275, which was an action against the city brought by Guyler and wife for an injury to real estate owned by them jointly:.

"It seems to us very clear that to permit both hus-

band and wife to testify in an action like this, would be in direct conflict with both the language and manifest meaning of section 606, Civil Code. For while they have an equal and undivided interest in the lot, and the injury to the buildings thereon of which they complain affected them jointly and equally, still the testimony of either in this case would be testimony for the other. In our opinion, therefore, it was error to permit both appellees to testify in this case.''

The case of Allen v. Commonwealth, 144 Ky., 110, relied on by counsel for appellants, does not conflict with the case, supra. In the Allen case the husband and wife had been jointly indicted for murder; they demanded a separate trial and the wife was tried first. She attempted to introduce her husband as a witness in her behalf, but the court refused to allow him to testify. In the opinion it is said:

''If the two defendants are tried together, each may testify for himself before the jury, but if they are tried separately, then one can not be a witness for the other.''

The difference between the rule applicable to a criminal case and that applied to a civil case like the one under consideration is obvious. In a criminal case the testimony of one defendant in a separate trial is clearly admissible on his own behalf, and might have no bearing whatever on the defense of another jointly indicted with him. Whereas, in a civil case like the one at bar, the testimony of either husband or wife is necessarily testimony for the other; either may testify, but both can not do so.

The case of Mitchell v. Brady, 124 Ky., 411, also relied on by counsel for appellants is not authority in point. In that case the action was brought by Mitchell as administrator of the estate of his deceased son, to recover damages for the negligent killing of the son. Mitchell's wife was permitted to testify as a witness; it was complained that this was error as her husband was the plaintiff, although he did not himself testify as a witness in the case. We held, however, that as the husband was suing in a fiduciary capacity, and for the benefit of himself and wife, the wife was a competent witness to testify in her own behalf, but it was not held that both husband and wife could testify. In other words that case, like the one at bar, was one in which either husband or wife could testify, but not both, and the wife was made the witness because she knew something of the accident

.that caused the death of the child, and the husband did not.

No reason appearing for disturbing the judgment it is hereby affirmed.