## THE STATE v. JOSEPH STAPP.

### Division Two, December 10, 1912.

1. **ABORTION: Instructions: Evidence.** Where, in a prosecution for administering drugs to, and using instruments upon, a pregnant woman, with the intent to produce an abortion, the evidence showed that the abortion took place four weeks after the alleged use of the instruments (a lapse of time which, according to all the expert testimony, made it impossible for the operation to have caused the abortion), it was prejudicial error to instruct, first, that defendant must be found guilty if he administered the drugs with the intent alleged, and, second, that to "administer" meant to "give" drugs to a person—the evidence showing that defendant gave the woman pills with directions to take them the next day, and there being no showing that she ever swallowed them.

2. ———: ———: **Prosecuting Witness: "Implicated."** It was not error to refuse an instruction telling the jury that the prosecuting witness in an abortion case is competent, "but the fact that she was implicated" may be considered in determining her credibility.

3. ———: **Indictment: Sec. 4458, R. S. 1909.** An indictment under Sec. 4458, R. S. 1909, does not charge the commission of any offense unless, being otherwise correct, it alleges that the death of the woman or of a quick child did or did not occur.

Appeal from Ray Circuit Court.—*Hon. Francis H. Trimble,* Judge.

REVERSED AND REMANDED.

*Lavelock & Kirkpatrick* for appellant.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

ROY, C.—Appellant is a physician and was convicted under an indictment charging him in one count with having administered drugs to a pregnant woman, and also with having used instruments upon her body, all with the intent to produce an abortion. There is no allegation in the indictment as to whether the death of the woman or of a quick child was caused by the abortion.

Elizabeth Bales testified that she, being about four months pregnant, went, in company with Reed Taylor, the author of her trouble, to the office of the defendant about ten o'clock at night on June 26, 1910; that Taylor first had a talk with the defendant out of hearing of the witness; that the witness then entered defendant's office, and defendant told her that he had learned from Taylor that they (witness and Taylor) were in trouble and that he had told Taylor that he (defendant) had helped others and would help them. That defendant used instruments in her womb, and gave her some pills with instructions to take them the next day. There was no evidence that she ever took (swallowed) the pills. No inquiry was made of her at the trial as to whether she ever took the pills into her stomach. The abortion occurred on July 24, 1910. She was not confined to her bed until the day on which the abortion occurred, but stated in her testimony that she could "hardly go."

Several physicians testified as experts that an abortion would not occur from the use of instruments so long after such use, and there was no medical evidence to the contrary.

Reed Taylor corroborated the evidence of Miss Bales as to the visit to defendant's office and the purpose of such visit.

The defendant testified and denied the charge in toto. The court refused a demurrer to the evidence asked by the defendant and also refused the following instruction asked by him:

"The jury are instructed that the prosecuting witness is a competent witness, but the fact that she was implicated in the alleged transaction may be taken into consideration by the jury in determining the credibility to be given to her testimony."

The jury were instructed to find the defendant guilty if they found that he, under the circumstances and with the intent mentioned in the instructions, administered to her any drugs or used upon her any instruments by inserting them in her womb.

By instruction 3 the jury were told that the word "administered" meant the giving to her any drugs for the purpose of producing an abortion.

I. We are confronted with the fact that the abortion did not occur until four weeks after the alleged use of the instruments. The expert testimony was all to the effect that such result would not follow after so long a time. The jury were not necessarily bound by the expert evidence, and had the right to find that the abortion was caused by the use of the instruments notwithstanding such expert evidence. But on this record we cannot say that they did so find. They may have found that the abortion was caused by the drugs. Yet there is no evidence that she took the drugs into her stomach.

Instruction numbered 2 authorized them to find the defendant guilty if he administered the drugs with such an intent. There was no evidence on which to base it.

Instruction numbered 3 told the jury that to "administer" drugs to a person meant to "give" them to such person. To "give" drugs to a person under some circumstances may possibly include the idea that such drugs are taken into the stomach. It could not have any such meaning in this case, because the evidence

was that defendant gave her the pills with directions to take them the next day.

The jury may have failed to find that any instruments were used; and, under those instructions, may have found the defendant guilty because he had delivered to her the pills regardless of whether she ever swallowed them. We cannot presume that she swallowed any of the pills. She was on the stand and counsel for the State did not ask her whether she swallowed them, and she made no statement on the subject.

Bishop on Statutory Crimes, Sec. 747, says: "To administer the poison or other thing is to cause it to be taken. It may be by forcing it down the woman's throat, or by violence compelling her to swallow it. Or it may be by delivering it to one who receives it into her system voluntarily, having, or not, asked for it."

We hold that there was no evidence on which the defendant could be convicted of administering drugs to the prosecuting witness. From the circumstances of the case, we think it more than probable that the jury convicted the defendant on that ground. The error was directly prejudicial to the right of the accused.

II. As to whether instruction F asked by defendant should have been given, Bishop says: "The woman is admissible as a witness within principles explained in another connection. We have seen that generally in our States she is not technically an accomplice, whose evidence, therefore, is within the special rule requiring confirmation. But it is by some deemed that, 'inasmuch as she was in a moral point of view implicated in the transaction, it would be proper for the jury to consider that circumstance in its bearing upon her credibility;' rendering a caution from the court, to this effect, judicious and proper, and evidence

confirmatory particularly appropriate. And some tribunals appear to regard her, as to confirmation, substantially the same as a technical accomplice. Yet, in reason, the difference is wide; for an accomplice swears under the temptation of earning thereby his own immunity, while she does not. She discloses her own disgrace; and, where no evil motive appears for it, this fact may, in reason, strengthen her credibility. Yet plainly the special temptations of the particular case should be taken into the account, and the attention of the jury may well be directed to them."

It will be noticed that the writer says that the attention of the jury "may well be directed to them." He does not state that such instruction must be given. None of the cases cited by that writer require that such an instruction should be given. We consider such an instruction useless. It contains no legal proposition and is purely a comment on the evidence.

III. The indictment does not charge the commission of any offense. Manslaughter, under the terms of section 4458, occurs only in case of the death of the woman or of the quick child. The offense of abortion is committed only when such death does *not* occur. There is no allegation that such death did or did not occur.

It is well to call attention to the fact that administering drugs with such intent is an offense, and that the use of instruments with such an intent is also an offense, and that the indictment attempts to charge both such offenses in the same count.

The judgment is reversed and the cause remanded. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.