## Davis, Agent, etc. v. Rhodes.

(Decided December 19, 1924.)

Appeal from Rowan Circuit Court.

1.  Carriers—Measure of Damages to Used Household Goods in Transportation is Diminution of their Reasonable Value to Owner. —Measure of damages to used household goods damaged in trans-

portation is not their decreased market value, but is diminution of their reasonable value to owner, excluding sentimental or imaginary value.

2. Carriers—Permitting Jury to Find Damages Greater than Claimed by Shipper Held Reversible Error.—Where amount fixed by shipper as damages for loss of use of household goods while being repaired was $50.00, it was error to permit jury to allow as high as $150.00 for this item, and verdict, being for lump sum, could not stand.

3. Evidence—Owner's Estimate of Value of Household Goods Damaged in Transportation Competent in Determining Damages.— Owner's estimate of value of household goods damaged in transportation by railroad was competent in determining his damages.

CLAY & HOGGE and HUNT, NORTHCUTT & BUSH for appellant.

S. S. WILLIS, D. B. CAUDILL and B. S. WILSON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing:

The only question presented by the pleadings and proof in this case is to what extent the appellee was damaged by the appellant's failure to safely carry from Huntington, West Virginia, to Morehead, Kentucky, a carload of household goods and furniture belonging to appellee. The furniture was badly damaged, and though some of it was repaired, there were a few articles so badly broken up as to be valueless. 'The court gave the jury the following instruction on the measure of damages:

"1. The court instructs the jury that if they believe from the evidence that the plaintiff, I. A. Rhodes, delivered to the Chesapeake & Ohio Railroad, then in operation by the Director General of the United States, at Huntington, West Virginia, on or about the 6th day of August, 1919, the household goods mentioned in the evidence and petition herein, for transportation on said railroad line, as a common carrier, for hire, to the plaintiff at Morehead, Kentucky, and that the Director General and his agents or servants there received said household goods for such transportation in consideration of the freight charges paid therefor by the plaintiff, and that said Director General, his agents and servants, in charge of and operating said railroad line failed to carry said goods safely from Huntington, West

Virginia, to Morehead, Kentucky, and failed to deliver said goods in the condition they were in when received by them, said Director General, his agents and servants at Huntington, West Virginia, to the plaintiff at Morehead, Kentucky, and that said goods or any of them were then destroyed, damaged or injured, then you will find for the plaintiff in damages any diminution in the reasonable value of said goods to the plaintiff, not exceeding the sum of $1,034.82, the amount claimed in the petition; and that by the diminution in the value of said goods to the plaintiff is meant, not imaginary or sentimental reduction in value, which plaintiff may have put on the articles, but any difference in the fair value in money to the plaintiff caused by the difference in the condition of said goods when delivered to the agent of the Director General at Huntington, West Virginia, and when delivered to the plaintiff at Morehead, Kentucky.''

The appellant complains of this instruction, insisting that the correct measure of damages was the difference between the reasonable market value of the property just before and just after the injury to it. It may be conceded that the market value rule as thus claimed by the appellant is the general rule covering cases of damage to or loss of personal property. However, this general rule is not of universal application. It appears to be settled by the great weight of authority that for the loss or conversion of or injury to household goods and wearing apparel in use, the market value rule must fail, for there is no real market value which will afford the standard of compensatory damage to the owner. These authorities hold that the measure of damages for such loss or injury is not the amount for which these articles would sell as second-hand goods, or the difference in market value due to the injury, but that it is the actual value in money of such goods to the owner for the purpose for which they were intended and used, or the difference in actual value caused by the injury, excluding sentimental or fanciful value which for any reason he might place upon them.

In the case of L. & N. v. Miller, 156 Ky. 677, 162 S. W. 73, this court had before it the question of the measure of damages for the loss of baggage consisting

of clothing and wearing apparel, and this court held that in cases of this character the loser's measure of damage is the value of the clothing for use by the owner; that any other rule would not compensate him for the loss, and that the market value rule applied by the lower court was erroneous. This court said:

"But ordinary wearing apparel does not come within this general rule. It is not held for sale, and if sold, it could be sold only as second-hand clothing, and bring but comparatively little. In other words, a coat which one has had made to fit him would not fit another man; and while it would be worth $25.00 to the owner, it would not be worth half that sum to any one else. Furthermore, ordinary wearing apparel, although not made to order, and worn only a few times, is worth much more to the owner than its market value as second-hand clothes."

In the case of C. O. & S. W. R. R. Co. v. Webb, 8 Ky. L. R. 44, a decision by our superior court, the goods lost consisted of household furniture and wearing apparel. In criticizing the market value rule, the court said:

"But there are things the actual value of which cannot be thus ascertained. Personal apparel has no market value; and even if it had, one should not be required to go into such market to replace his lost clothing. The actual value of the thing lost, and therefore the actual damage occasioned by the loss, is the value of the garment, in its worn condition, as compared with its value if it were new, excluding considerations of inconvenience resulting from being deprived of its use. A garment may be sufficiently worn to prevent its having any market value, and yet it may be, for actual use, very nearly as valuable as when it was new and had a market value. There should be a recovery for that part of the original value which has not been consumed by use, but not for that part which has been so consumed."

In all the cases from this court cited by appellant in its brief, the goods damaged or injured were of the character dealt in all the time in the marts of trade, and of the kind which had a well defined and fixed market value commensurate with the value of the articles to the owner

thereof. It seems clear to this court that the considerations which induced it to adopt the rule above noted with reference to personal clothing and baggage should be extended to articles of household goods. Everyone knows that such goods when placed upon the market in a second-hand condition bring practically nothing in comparison with the value of such goods to the owner himself. A bed may be just as good for use to the owner though some five or ten years old as a new one would be, and yet if he were compelled to take its second-hand value he would get so little a sum that he could not replace that bed save by adding thereto a difference far greater than represented by the five or ten years' use of the bed he had. In 10 Corpus Juris, p. 398, it is said:

"Where goods lost in transportation have no market value in the ordinary acceptation of the term, such, for instance, as wearing apparel, household goods, etc., compensation for the actual loss is the fundamental principle on which the measure of damage rests. The amount to be awarded as damages is ordinarily the actual value of the goods lost to the owner, considering their cost, the practicability and expense of replacing them, and such other conditions as affect their value to the owner, and not what the goods might bring if sold as second-hand goods, or merely nominal damages. Such a basis of estimating damages, it is said, would be most unjust, as the amount awarded would then depend largely on circumstances which would have nothing to do with the intrinsic value of the articles or their actual worth to the owner. But the owner is not entitled to recover some fanciful price which he might place on the lost goods, but should recover only such reasonable damage as from the nature of the goods or the nature of their use to him he has sustained by their loss."

To the same effect is Sutherland on Damages, section 919. In L. R. A. 1917D, at page 495, may be found a note collecting the authorities on this point, which sustain the proposition above laid down. Quoting from Barker v. Lewis Storage and Transfer Company, 78 Conn. 198, 61 Atl. 363, the note says:

"The cardinal rule is that a person injured shall receive fair compensation for his loss for injury and

no more. . . . Commonly the value of the property as representing the owner's loss is its market value, if it have one, since thereby is indicated the cost of replacing. . . . But the principal rule, which seeks to give fair compensation for the loss, is the paramount one, and ordinarily when the subordinate one fails to accomplish the desired result, it yields to an exception or modification. . . . It is now generally recognized that wearing apparel in use, and household goods and effects owned and kept for personal use, are articles which cannot in any fair sense be said to be marketable and have a market value, or at least a market value which is fairly indicative of their real value to their owner and of his loss by being deprived of them. So it has been frequently, and we think correctly, held that the amount of his recovery in the event of conversion ought not to be restricted to the price which could be realized by a sale in the market, but he should be allowed to recover the value to him based on his actual money loss, all the circumstances and conditions considered, resulting from his being deprived of the property, not including, however, any sentimental or fanciful value he may for any reason place upon it.''

We therefore conclude that where, as here, household goods and effects owned and kept for personal use are damaged, the measure of damages is the one given by the instruction complained of in this case, and that the lower court did not err in so advising the jury.

By his second instruction, the court permitted the jury to find, in addition to the damages which might be allowed under instruction number one above discussed, a further sum such as to reasonably compensate the plaintiff for the loss of the use, if any, of said household goods during the time they were being repaired, not to exceed on this account the sum of $150.00. The evidence in this case showed that the goods arrived at Morehead in their damaged condition in August or September, at which time the plaintiff was engaged in building a house. This house was not completed until the following December, by which time his household goods had been repaired and were ready for use by him. In the meantime, the plaintiff had been staying temporarily in a couple of

rooms waiting for the completion of his home, and it is very apparent from this record that he could have used but a very small part of his furniture during this fall had it all arrived in good condition. The loss of the value of the use of the property while it was being repaired must have been very small indeed. The highest value placed on this loss of the use was by the plaintiff and he fixed it at only $50.00. The court should not have submitted a greater value than what the proof disclosed to be the maximum that might be allowed on this item of special damages. The verdict in this case is a lump sum verdict, and we are unable to say how much of this verdict is for the damage done the property and how much for the loss of the use of the property. The lower court permitted the jury to find as much as $150.00 on this latter account, and the jury, so far as this court can determine from the record, may have so found, although the highest amount fixed by any witness for this item was $50.00. The instruction being erroneous in this regard, it is patent that the verdict cannot stand, and for this reason the case must be reversed.

It is lastly urged by appellant that the court erred in permitting the plaintiff and his witnesses, Blair and Maggard, to testify concerning the value of the different articles of furniture complained of as having been damaged. So far as Maggard is concerned, he sufficiently qualified himself to testify under the familiar rule as to expert witnesses claimed by appellant. The witness Blair did not undertake to place any money value on the furniture damaged but only detailed the character of the injuries. So far as the plaintiff's testimony is concerned, a great deal of it was given without objection. Furthermore, as said in 22 Corpus Juris, page 581: "The mere fact of ownership of personal property is usually regarded as sufficient to qualify one to state his estimate of its value." In Jones on Evidence, page 455, the author says:

"Persons by their common experience and observation necessarily gain some knowledge as to the value of those articles which are in common use by all or nearly all, and their evidence as to such values is not excluded by the fact that experts have more accurate knowledge as to such values. Obviously the witness must have some means of knowledge as

to the nature or quality of the articles in question before he is qualified to express an opinion as to values.''

In 17 Cyc. 113, we find that the doctrine that an owner of chattels is qualified, by reason of that relationship, to give his estimate as to their value, is supported by many cases involving the determination of the value of household goods and wearing apparel. See also 37 L. R. A. (N. S.) 588. The annotation in L. R. A. 1917D, at page 506, says:

"It will be presumed that the owner and others familiar with the property have a knowledge of the value of such articles as household furniture and other household goods in common use; and it is not therefore essential, as a condition precedent to the admission of testimony of the owner as to the value of ordinary household goods wrongfully taken from his possession, to prove that he knew of the value of the property."

Under this rule, we believe that the testimony of the plaintiff was thoroughly competent and the court did not err in its reception.

However, for the reason hereinbefore given, the judgment of the lower court must be reversed with instruction to grant appellant a new trial consistent with this opinion.

Judgment reversed.