## Union Light, Heat & Power Co. v. Heving et ux.

(Decided May 23, 1933.)

GALVIN & TRACY for appellant.

JOSEPH P. GOODENOUGH and SAWYER A. SMITH for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in part and reversing in part.

John A. Heving and Ruth Heving, his wife, were joint owners of a frame residence located on the south side of Thirty-Second street in the city of Covington, and designated as No. 119. On January 6, 1931, the house and its contents were destroyed by fire caused by an explosion of gas. Thereafter the Hevings sued the Union Light, Heat & Power Company to recover damages. The jury awarded them $6,750 for the destruction of the house and $13,428.35 for the destruction of its contents. The Union Light, Heat & Power Company appeals.

At the time of the explosion appellant maintained a gas supply main in Thirty-Second street, which had been placed there in the year 1914. The main was of steel, and about 3 inches in diameter. The street was a macadam-tarvia bound, and the main was 22 inches under ground, and about 3 feet from the curb. After the explosion the pipe was uncovered and found to be broken near one of its joints, and directly in front of appellees' property. At the time of the explosion in question, there were also other explosions in the houses immediately adjoining, and on either side of the Heving residence. The service pipe into the Heving residence was connected with the main a few inches from the break, and the gas made its way along the outside of the pipe into the cellar, and was burning after the explosion. The evidence clearly shows that the escaping gas came from the main, and it is not contended that there was any other leakage.

The grounds of negligence relied on were that the defendant did construct and maintain a defective and insecure pipe line, did permit and allow the pipe to remain in bad repair, and rusted, rotten, and incapable of retaining natural gas, did permit it to become and remain dangerous for use, did fail to maintain said pipe line as to prevent the escape of gas therefrom, and did fail to inspect the pipe line and repair same before the infliction of the injuries thereinafter set out, and all of which was known to the defendant before the explosion, and could have been known to it by the exercise of ordinary care in sufficient time to inspect and repair the same before said explosion and injuries.

Appellant insists that as appellees specified the acts of negligence on which they relied, the doctrine of res ipsa loquitur is not available, and with this element

of proof excluded the evidence was insufficient to take the case to the jury. Whether this view of the res ipsa loquitur doctrine is sound or not, we deem it unnecessary to determine. The evidence for appellees in brief is as follows: During the first part of September, and more than three months before the explosion, the fact that gas was escaping in the vicinity of 119 West Thirty-Second street was reported to appellant. Appellees employed a plumber, who inspected the service pipes in the house on September 8, and again on September 16, and the gas which caused the explosion did not come from the service pipes in the house. After she employed the plumber, Mrs. Heving again called appellant's attention to the fact that gas was escaping. Appellant's record shows that such fact was reported from No. 119 in the month of September, and it further appears that appellant sent an inspector to the Heving house as a result of such reported leak. The fact that gas was escaping in the vicinity was also reported to appellant from the house immediately east of the Heving house. Following this appellant sent to that house an inspector, who did not locate the place at which the gas was escaping, but who claimed that the odor was from an oil refinery some distance away. On two occasions the fact that gas was escaping was reported from the house immediately west of the Heving house. Escaping gas was also reported to appellant from 114 West Thirty-Second street on December 22, 1930, which was only a few days before the explosion. It further appears that in the month of December, 1930, a man who moved a truck load of coal from the street in the basement of the Heving house reported to appellant that gas was escaping. When the main was uncovered it was in its natural position, and the ends fitted close together and were not pulled apart, which would have happened if the break had been the result of pressure. On the other hand, appellant's officers and experts testified that the break in the main was a clean break, and occurred at the time of the explosion, and that they made a rigid inspection of the mains, and that no leakage at the point in question was disclosed. It is not clearly shown, however, that appellants did actually inspect the main at or near the place of explosion.

It will be observed that this is not a case where appellees had to depend on a broken main and nothing else. The evidence is uncontradicted that gas had been

escaping in the vicinity of the Heving residence and adjoining houses for several weeks, and that the leakage was not due to any defects in the service pipes in those houses. Not only so, but the leakage was reported to appellant and appellant sent an inspector to examine the situation, who made no inspection of the main, but attributed the odor to an oil refinery some distance away. In the face of this evidence it cannot be said as a matter of law that the main broke immediately before the explosion. On the contrary, it is but a fair inference from the proven facts that the main had been broken some time before the explosion and that a reasonable inspection by appellant after it had notice of the actual conditions would have revealed the defective condition of the main. In the circumstances there can be no doubt that the question was for the jury.

The court properly fixed the measure of damages for the total destruction of the house as the fair and reasonable value of the building. Prestonsburg Superior Oil Gas Co. v. Vance et al., 215 Ky. 77, 284 S. W. 405, 47 A. L. R. 483; I. C. R. R. Co. v. Nuckols, 212 Ky. 564, 279 S. W. 964. As the jury fixed the damages to the house at $6,750 by a separate finding, and the amount so fixed is supported by the evidence, it cannot be said that the verdict is excessive. That being true, that portion of the judgment will not be disturbed.

With respect to the contents of the house a different question is presented. The court fixed the measure of damages as to all the contents as "the fair and reasonable value thereof to the plaintiffs." There can be no doubt that as to the household goods and wearing apparel in use, all of which were destroyed, the measure of damages is correct, and that in reaching a conclusion as to their value to the owners the jury may hear evidence of their original cost, the amount of use to which they had been subjected, their condition at the time of their destruction, and any other circumstance affecting their value. Davis v. Rhodes, 206 Ky. 340, 266 S. W. 1091. The term "household goods," within the meaning of the rule, does not include all personal effects that may be kept in the home, but is restricted to those articles that are necessary for the enjoyment of the home and are more valuable to the owner than the price at which they could be sold. That being true,

such articles as golf sticks and bags, jewelry, cigarette boxes and lighters, perfume, face creams, chest of silver, opera glasses, shotguns, piano, and poker chips, do not fall within the category of household goods. They have a value in the market, and their market price at the time they were destroyed is the measure of damages.

But another phase of the case presents a more serious question. On the theory of joint ownership Mrs. Heving was permitted to testify not only as to the value of all of the household goods and effects, which might be said to be jointly owned by her and her husband, but also as to the value of her husband's suits of clothes, overcoats, shirts, shoes, underwear, pajamas, lounging robes, slippers, gloves, tuxedo suit, hunting coat, neckties, bats, etc., aggregating about $1,775. While it may be true that Mrs. Heving and her husband were joint owners of the household goods and effects, and of the effects belonging to their infant child, and that she could testify to the value of such articles, City of Covington v. Geyler, 93 Ky. 275, 19 S. W. 741, 14 Ky. Law Rep. 145; Weber v. Lape, 145 Ky. 769, 141 S. W. 67, we find no basis for the conclusion that by virtue of their marriage and their subsequent purchase, she owned jointly with her husband his clothing, mits, baseball suits, underwear, and pajamas, and the numerous other articles which he had purchased and used exclusively for his own comfort and convenience. Clearly as to these articles and the like she was not competent to testify on behalf of her husband. Civil Code of Practice sec. 606.

In view of the conclusion of the court it becomes unnecessary to determine whether the verdict as to the contents of the house is excessive.

Wherefore that portion of the judgment fixing the damage to the residence at $6,750 is affirmed, and that portion of the judgment fixing the damages to the contents of the dwelling is reversed, and the cause remanded for a new trial consistent with this opinion.