**STERN v. UNITED STATES.**

**GIORDANO v. UNITED STATES.**

Nos. 11597, 11598.

United States Court of Appeals
Sixth Circuit.

May 25, 1953.

McAllister, Circuit Judge, dissented.

George S. Fitzgerald, Detroit, Mich., Philip A. Gillis, Detroit, Mich., on brief, for Max Ben Stern.

Russell G. Mock, Youngstown, Ohio, for Joseph Giordano.

Vincent Fordell, Detroit, Mich., Joseph C. Murphy, Detroit, Mich., on brief, for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

PER CURIAM.

On February 17, 1953, an order was entered in this court affirming the judgments of conviction and sentence in these two criminal appeals. On February 18, appellants, through their attorneys, filed a motion for correction of the record on appeal, wherein omissions and inaccuracies in the record filed theretofore were set forth. On February 19, 1953, this court, in the interest of substantial justice, entered an order setting aside the order of affirmance theretofore entered and remanded the causes to the United States District Court for procedure in conformity with the Rules of Civil Procedure to settle the record, so as to make it conform to the truth with respect to the proceedings in the district court brought here for review.

The case was ordered set for rehearing at the present session and has been heard on

the supplemental, corrected record and on the briefs and oral arguments of the United States Attorney and attorneys for the appellants.

The court adheres to its original decision that there was substantial evidence, largely circumstantial but sufficient in character if the jury so considered it, to exclude every hypothesis except that of the guilt of the accused parties, unless there was error in the interpretation by the trial court, and in its charge, concerning the replacement value of the stolen furs transported in interstate commerce from Youngstown, Ohio, to Detroit, Michigan.

█ The statute upon which the indictment was placed provides: "Whoever shall transport or cause to be transported in interstate or foreign commerce any goods, wares, or merchandise, securities, or money, of the value of $5,000 or more theretofore stolen * * * or taken feloniously by fraud or with intent to steal or purloin, knowing the same to have been so stolen * * * or taken, * * * shall be punished by a fine of not more than $10,000 or by imprisonment for not more than ten years, or both". Section 415 [now section 2314], Title 18 U.S.C.A., National Stolen Property Act. It will be observed that the goods transported in interstate commerce must possess a value of $5,000, or more, as an essential or jurisdictional ingredient of the offense defined. It is, of course, settled that the market value at the time and place of the taking is the true standard of value within the meaning of the statute, if the stolen goods have a market value at such time and place. See Kowalchuk v. United States, 6 Cir., 176 F.2d 873, 876; and Gordon v. United States, 6 Cir., 164 F.2d 855. The original record, heretofore considered by us on the former hearing, did not contain the Court's charge to the jury. The supplemental record shows that the jury was charged: " * * * If you should find from all of the evidence in this case that there was no market for these furs, as used furs, at that time and place, then you have a right to consider their replacement value at the time and place mentioned here, which would be, as you know, around

Youngstown or neighboring places. In other words, you will consider what the cost would be to replace these furs between January 1, 1948 and February 20th, 1948." The further charge of the court limited the issue of value to either the market value or the *replacement* value.

The supplemental record also shows what the original record did not show— that there was specific exception by one of the attorneys for defendants to the portion of the charge which referred to "replacement value." Moreover, the firm insistence of appellants throughout the trial was that there was a specific market value for the furs in the Youngstown area, and that such market value was less than $5,000; but that, if the jury should reject testimony to such effect, the court had no right to charge it to substitute "replacement value" for "market value" as the criterion or standard of value intended by the federal statute. We consider Husten v. United States, 8 Cir., 95 F.2d 168, relied on by the government as authority, not to be pertinent to the present issue.

█ We think the position of appellants is well taken and that the court should not have limited the jurors to consideration of "replacement value" should they find that there was no "market value" for the furs in the Youngstown area. Such a standard gives no effect to depreciation from use, and particularly, in the case of such property as is involved in this case, to deterioration which the evidence showed often resulted from the mere passing of time. See Myers v. State, 137 Md. 491, 113 A. 90. If there was no "market value" for the used furs in the Youngstown area, then their actual value should be shown in other ways. Durocher v. Myers, 84 Mont. 225, 274 P. 1062; Klam v. Koppel, 63 Idaho 171, 118 P.2d 729; State v. Walker, 119 Mo. 467, 24 S.W. 1011. Actual value is not necessarily the same as original cost, as economic conditions affecting value may have materially changed since the article was purchased. Gray v. Commonwealth, 288 Ky. 25, 27, 155 S.W.2d 444; State v. McComas, 89 Mont. 187, 295 P. 1011, 1013. In determining the value of

the furs in the present case at the time when they were stolen, the Court should have instructed the jury that if there was no "market value" for the furs, as used furs, at that time and place, then it should consider their replacement value at that time and place, less the depreciation or deterioration in value, if any, that occurred to the furs during the period of time the furs were owned by their owner prior to being stolen from her. Pratt v. State, 35 Ohio State 514, 518. See Davis, Agent, v. Rhodes, 206 Ky. 340, 266 S.W. 1091; Union Light Heat & Power Co. v. Heving, 250 Ky. 223, 226, 62 S.W.2d 789. In making·this determination, the jury could properly consider the original cost, the period of time which had elapsed since the purchase, the amount of use to which they had been subjected,˙their physical condition at the time they were stolen, and any other circumstances affecting their actual value. Filson v. Territory, 11 Okl. 361, 67 P. 473; Lambert v. State, 91 Neb. 520, 136 N.W. 720; State v. McComas, supra; Myers v. State, supra. Such an instruction recogognizes the element of replacement value, which was used by the Trial Judge, but does not make such value the sole criterion.

 .Although Government expert witnesses testified that there was no depreciation or deterioration, that the furs were as good as new, and that the replacement value was their actual value, the jury did not have to accept such testimony, even if uncontradicted, and could find from a physical examination of the furs and from the fact of ownership and use from July, 1946, for one of the furs and from September, 1947, for the other, until February, 1948, when they were stolen, that depreciation or deterioration actually had taken place. Quock Ting v. United States, 140 U.S. 417, 420–421, 11 S.Ct. 733, 35 L.Ed. 501; Norton v. United States, 8 Cir., 205 F. 593, 601, certiorari denied, 235 U.S. 699, 35 S. Ct. 200, 59 L.Ed. 432; State v. Murphrey, 186 N.C. 113, 118 S.E. 894; United States v. Candler, D.C.N.C., 65 F. 308, 312; People v. Taylor, 4 Cal.2d˙ 495, 50 P.2d 796; State v. Stapp, 246 Mo. 338, 151 S.W. 971; George v. State, 240 Ala. 632, 200 So. 602. The charge, as given, foreclosed this right.

The judgment is reversed in each case, and the cases are remanded to the District Court for a new trial.

McALLISTER, Circuit Judge (dissenting).

There appears to me no reversible error in the court's charge on the question of value wherein it instructed the jury that the market value at the time and place of taking was the true standard of value within the meaning of the statute, and that if there was no market value for the furs at the time and place in question, the jury could consider the cost of replacement of the furs at the time and place as the value of the furs for the purpose of the case.

Among the witnesses for the government, Stephen J. Peterlin, an expert furrier, testified that, considering the use which the two garments had and the fact that they showed no visible soil, the value of each garment at the date of transportation was, in his opinion, the same as the purchase price of $3,997.50. Harold J. Cikra, another government witness, testified that, taking into consideration the fact that one of the garments was purchased in September, 1947, and the other, in July, 1946; that both had been subjected to some wear; that there had been a slight oxidation of the fur, but that the color was still very desirable, his judgment was that each of the garments was of the value of $3,-500.00, one of the reasons being that he considered, as an expert, that the furs in question were "as good as new." He further stated that his judgment was that their value was equivalent to what their replacement value would be. Ray J. Sullivan, another expert, also testified that in his opinion, taking into consideration that the garments had been subjected to some use, he valued one of them, as of the date of transportation, at $3,500.00, without tax, "even considering that it was purchased in September, 1947," and the other garment, which he testified was "in perfect condition," at $3,000.00, without tax. He further testified that it was his opinion that it would cost that much to replace the garments and, in answer to a question on cross-examination that "That replacement

cost, to you, * * * is the reason why you say three thousand and thirty-five hundred, without the tax?" he replied: "Yes, sir." He further testified that the stolen furs would retail and sell for $3,000.00 and $3,500.00 at the time of the transportation; and that this was not the replacement cost, but the retail price at the time of suit, further stating: "Those garments don't show any wear at all. They are new garments, practically." Fred Everth, another expert, gave as his opinion that the stolen furs were, as of the date of transportation, of the value of $5,500.00 and that his opinion was based upon the fact that there had been no depreciation in the value of the furs and that the value of these particular furs, in his opinion, at the time of the transportation, was the same as their replacement value.

In short, then, the foregoing can be summed up to the effect that, taking into consideration the time when these particular fur garments were purchased, the fact that no part of the garments showed the slightest soil, considering the use to which they had been subjected, the slight oxidation that had taken place, the evidence of the government's expert witnesses disclosed that there had been no depreciation in the value of the furs; they showed no wear whatever; they were as good as new; they were practically new garments; they were of the same value as when originally purchased; and this value was the same as their replacement value as of the date of transportation.

From the foregoing, a controlling fact stands out: The real or actual value of the fur garments in question as of the date of transportation was the same as their replacement value. If there was no market value, it appears agreed that the real or actual value is the value that controls in the application of the statute. Is the real or actual value of stolen property the same as its replacement value?

In Childress v. State, 92 Tex.Cr.R. 215, 241 S.W. 1029, where a chattel for which there was no market value had been stolen, the court considered the real value of the property to be what it would cost to replace it.

"Where evidence of value is relevant to determine the grade of the offense, the accused may show that the value of the property was such that he should not be convicted of grand larceny. Usually the market value at the time and place of the theft is the only proper evidence. * * * If the property has no market value at the time of the trial, it is competent to prove the purchase price. The owner's opinion of the value of the property has been received." Underhill on Criminal Evidence, Section 298 (Second Edition).

In Martinez v. State, 16 Tex.App. 122, 128, the court said:

"What is this proper standard in cases of theft? Mr. Bishop says 'The word "value" is, like most others, even in legal language slightly variable in meaning; but, ordinarily, for the purposes of this inquiry, it signifies the sum for which the like goods are, at the time, commonly bought and sold in the market. If a thing has a value to the owner, though to no one else, to steal it is larceny, its "value, as to the rest of the world," being, in the language of Grose, Judge, "immaterial." Still, in determining the grade of the offense, the value merely to the owner is not the standard for the jury. Yet, a thing not bought and sold in the market may have a value, as when it is an article fitted for a specific use of the owners, and worthless for every other purpose. To attempt to test it by the open market, where it is never offered for sale, and is never bought, would be absurd. In reason, the cost of replacing it would ordinarily be the standard of its value.' (2 Bish.Crim.Prac., Sec. 751.)"

The court futher held that any evidence from which the jury could infer the value of the stolen property was proper, such as the opinions of witnesses having knowledge of the value of like property.

In Patterson v. State, 138 Tex.Cr.R. 551, 137 S.W.2d 1030, the following rule is stated:

"Value as it relates to stolen property is the market value at the time

and place of the taking, or, in case of property without a market value, the cost of replacing it."

In State v. McDermet, 138 Iowa 86, 115 N.W. 884, 885, in a trial for larceny of clothing, the court said: "The property stolen was largely wearing apparel, and the court over defendant's objection permitted the owner to state the cost thereof. The clothing had been worn and had no market value, and in such cases the cost or value when purchased is to be considered in fixing its actual value when taken."

In the absence of evidence of the market value of property stolen, there is no error in proving the actual value of that character of property in order to establish the grade of the offense. State v. Walker, 119 Mo. 467, 24 S.W. 1011.

Regardless of any difference of opinion on the score of what the rule with regard to value should generally be, it is clear that in this case, the real and actual value of these particular furs was the same as their replacement value in the opinion of all the expert witnesses who testified as to their value, with the exception of appellants' witnesses who testified only as to their market value as second-hand furs. It is to be noted that in Pratt v. State, 35 Ohio St. 514, 35 Am.Rep. 617, the court held that where partly worn clothing had been stolen, the best rule for obtaining the value of such property would be to deduct from the market price of new goods of like kind, a reasonable amount for the depreciation in value caused by the wear and use. In the instant case, the evidence was that the fur garments were not depreciated in value by wear and use.

Whether the rules as to value in the foregoing cases be in accord or conflict with each other, we need only consider the facts here in issue and determine whether the district court was in error in the particular instructions on the question of value which it submitted to the jury.

The precise question before us is enucleated in the proposition as submitted by appellants' counsel, as follows: "It is only where the stolen property had no 'market value' (either at the situs of the theft or in the vicinity thereof) that its 'replacement value' may be taken as the proper measure of 'value' for purposes of a penal statute of the nature of the National Stolen Property Act."

Appellants, in seeking to show the market value of the stolen fur garments, as used furs, called dealers in second-hand furs who gave evidence of such value. The evidence of the expert witnesses for the government was to the effect that furs, after being sold by a retailer and used by a customer, do not carry a used market value; that there was no market for used furs unless they were so used up that they could not be further used for wearing purposes, but only for repairing and patching other coats; that the furs in this case could not be considered in the same category as furs which were bought for patching and repairing purposes; and that there was no market value for furs like those stolen in this case.

The only evidence in the case, then, on value was as to the market value of the garments as second-hand furs, as testified to by appellants' witnesses, and their actual value, as testified to by the government witnesses, who further stated that such actual value was the same as the replacement value. All of the government witnesses testified that there was no deterioration in the value of the furs resulting from use. None of appellants' witnesses testified that there was deterioration resulting from use. Appellants' case was tried upon the theory that the value of the garments was their market value as second-hand furs. In view of the evidence in this case, where the uncontradicted testimony of government witnesses was that there was no depreciation of the furs as the result of use and wear, the court would not, in my opinion, have been justified in submitting the question of how much depreciation there was from use and wear to the jury, and it was properly excluded from the jury by the trial court. For the general rule is that the positive testimony of witnesses as to a particular fact, uncontradicted by anyone, should control the decision of the court or jury. Quock Ting v. United States, 140 U.S. 417, 11 S. Ct. 733, 35 L.Ed. 501. The rule, of course, admits of many exceptions, as when there

is such an inherent improbability in the statement of a witness as to induce the court or jury to disregard his evidence even in the absence of any direct conflicting evidence; or a witness may be contradicted by the facts he states as completely as by direct adverse testimony; or there may be so many omissions in his account of particular transactions or of his own conduct as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity and create the impression that he is giving a wrong coloring to material facts. Quock Ting v. United States, supra. To the same effect, see Norton v. United States, 8 Cir., 205 F. 593; United States v. Candler, D.C.N.C., 65 F. 308. In this case, however, the general rule that the positive uncontradicted testimony of witnesses to a particular fact should be accepted by the jury is applicable, for none of the circumstances above described as militating against such testimony were here present, and there was no inherent improbability in the testimony of the government witnesses, or contradictions of them by the facts in the case.

Appellants insist that, since they proved there was a market for second-hand furs, the "market value" of the stolen furs is determined by a consideration of what they would bring on such a market. I am unable to concur in this view, and, on this issue, find myself in accord with what the court said in Pratt v. State, supra: "As was shown, on the trial below, we can readily perceive that there is no such market for partly-worn clothing, as will show the real value or worth of such articles; and to confine the testimony to the market rates for second-hand clothing, would, in such cases, substantially close the door to all proof of value." See also Printz v. People, 42 Mich. 144, 3 N.W. 306, where it was held that in proving the value of a stolen fur coat, the opinion evidence of the owner as to its actual value was competent, and that it was unnecessary to call dealers in second-hand furs.

The district court left it to the jury, then, to ascertain the value of the furs, either according to their market value, if there was a market value for them as used furs, or their replacement value, which, according to the evidence, was the same as the real and actual value of the furs at the time of their transportation. The jury came to the conclusion that there was no market value for furs like those in question on the second-hand market, and accepted the value as testified to by the government's expert witnesses. The great body of the evidence supported this conclusion.

If the trial court had left it to the jury to ascertain what the actual value of the furs was at the time of transportation, there was a mass of credible and uncontradicted evidence upon which it could properly reach a verdict on this aspect of the case, and there could have been, in my opinion, no valid claim of error based on such action of the court in so submitting the case. Yet, the only evidence before the jury on actual value was the evidence of the government witnesses as to actual value, which was the same as the replacement value; and I see no difference, as far as this case goes, whether the value the jury found was the actual value or the replacement value. They were the same, according to all of the uncontradicted evidence. And if it be concluded that it was error for the court to use the one expression rather than the other in its instructions, it was harmless error under the facts of this case. Rule 52(a) of Federal Rules of Criminal Procedure, 18 U.S.C.A.

Aside from the propriety of the court's instructions, it may be said that there is no merit to appellants' complaint that the opinion evidence as to the value of these particular stolen furs should not be accepted in lieu of their value as second-hand furs on the ground that such evidence came from witnesses who were engaged only in the purchase or sale of new furs and not in furs that had already been sold at retail and had been used by a customer. In this regard, it was aptly said by the Supreme Court of Michigan in a civil suit for damages, where objections had been made to evidence of opinion value: "If defendant's wrong injured plaintiffs, then escape * * * cannot be had because of difficulty in making the proof of amount thereof. It was not necessary for plaintiffs to find witnesses

able to express opinions from experience in a like instance in the vicinity. No like instance was shown, and none probably existed. The evidence was the best available, and defendant is but experiencing the fate of one causing a damage incapable of mathematical demonstration, and therefore the measure may be shown by opinion evidence." De Vries v. Meyering Land Co., 248 Mich. 128, 130, 226 N.W. 824, 825.

In accordance with the foregoing, I am of the opinion that the judgment of the district court should be affirmed.