CHARLES LAMBERT v. STATE OF NEBRASKA.

FILED MAY 29, 1912. No. 17,443.

1. Criminal Law: NEW TRIAL: MISCONDUCT OF JUROR. Under the evidence in this case, an improper statement made by a juror in the jury room, after the case was submitted, held not to constitute such prejudicial error as to require the reversal of the judgment and the granting of a new trial.

2. ——: ——: CONFINEMENT OF JURY. The case was submitted to the jury upon Wednesday at about 11 o'clock P. M. The verdict was rendered upon the succeeding Friday morning. During the two nights that intervened the jury were not furnished sleeping

accommodations, but were kept in a comfortable room and re-
ceived regular meals.  The practice of keeping jurors for lengthy
periods without opportunity to sleep is unfavorably criticised,
but, under the facts set forth in the opinion, *held*, that the dis-
trict court did not err in refusing to grant a new trial on this
account.

3. ———: EVIDENCE.  A farmer, who was the owner of the stolen
harness which plaintiff in error was charged with unlawfully
receiving, was permitted to testify as to the purchase price of the
harness in the regular course of trade a short time prior to the
theft, and as to the amount of wear that it had received, and
also to give his opinion as to the value of the harness. *Held* not
erroneous.

ERROR to the district court for Thurston county: GUY
T. GRAVES, JUDGE.  *Affirmed.*

*Thomas L. Sloan* and *Herman Freese*, for plaintiff in
error.

*Grant G. Martin, Attorney General, Frank E. Edger-
ton* and *Howard Saxton, contra.*

LETTON, J.

Plaintiff in error was convicted on the charge of re-
ceiving stolen property of the value of $36.  The first
error assigned and argued in his behalf is that there was
misconduct of the jury.  Affidavits of three of the jurors
filed in support of the motion for new trial are in sub-
stance to the effect that a juror named Hill, after the case
was submitted and during its consideration by the jury,
stated that he knew Lambert to be a thief and that he
was a bad character, and that he repeated this and similar
statements during the whole time the case was under con-
sideration.  On the other hand, an affidavit was made by
Hill denying that he ever made a positive assertion that
Lambert was a thief, but the affidavit recites that, while
he had no acquaintance with Lambert, an incident that
happened during the trial recalled to his memory the fact
that he had heard it stated by a brother-in-law of the

accused at a time seven years before the trial that he had heard a rumor that Lambert was a thief. Hill's affidavit further averred that when he made this statement he was reprimanded by another juror for making the same and that he did not repeat it. The affidavits of other jurors are to the effect that the remark made by Hill, which was heard by all of them, made no impression upon their minds and that the verdict was based upon the evidence submitted. Plaintiff in error does not contend that the affidavits of the jurors produced by him may be used to impeach the verdict, but says that he complains only of the misconduct of the juror Hill. The trial court determined that the statement made by Hill was not prejudicial to the accused. We are of the same opinion. The statement was improper and should not have been made, but, under the evidence, we are unable to perceive whereby this misconduct could or did affect the verdict.

It is next contended that a new trial should be granted for the reason that the verdict was forced by the physical exhaustion of certain jurors. It appears from an affidavit made by certain jurors that the case was submitted to the jury on Wednesday at about 11 o'clock P. M., that the jury were confined from that time until the succeeding Friday morning when the verdict was rendered, that during the two nights there were not furnished sleeping accommodations, that they deliberated during the two nights and a day in which they were kept together, and that they were physically exhausted to such an extent they could not hold out longer, and they agreed to the verdict for that reason and by reason of being harassed by other jurors who had determined not to yield. Counter affidavits of most of the other members of the jury were filed by the state to the effect that the jury were placed in a comfortable room with chairs, table and paper, that they received their meals and had plenty to eat and drink, and that no juror was physically overcome. If the evidence in this case left the matter of the guilt of the defendant a close question, we should be very much inclined to set

aside the verdict and grant a new trial on account of this treatment of the jury.  It is high time that the barbarities of the common law should be done away with, and that verdicts should be reached as a result of thought and deliberation, and not as a result of physical compulsion. There is no more reason for subjecting jurors to confinement in a small room for two nights and a day without opportunity for rest or repose than there would be for subjecting the judge himself or the other officers of the court to like privations.  The strength of memory and the capacity for sound judgment usually found in persons in elderly life, as a number of these jurors were, is apt to be impaired if they are deprived of sleep for 48 hours. Moreover, under such conditions the man who is physically stronger may by force of that very fact prevail over the judgment of his brother juror who may be stronger mentally, but physically weaker.  We criticise the practice unfavorably in the hope that it may not be repeated, but in this case we are of opinion that the evidence sustains the finding that the verdict was not produced as a result of the exhaustion of the jurors who made the affidavit.

There is another consideration entering into this case which should, perhaps, be noticed.  The evidence of the value of the property alleged to have been received took a wide range, extending from $10 or $15 to $45.  The jury found the value to be $36.  By an oversight of the legislature, possibly, the receiving of stolen property of any less value than $35 is not a crime.  The court was, therefore, compelled to instruct the jury that, in order to find the defendant guilty at all, they would have to find the value of the property to be at least $35.  It was then for the jury to find that value or acquit.  They went one dollar over the mark fixed by law.  It is complained that there was no competent testimony as to the value of the harness.  It is shown that it was nearly new and had only been used a few times, that the owner of the harness, whose testimony is particularly complained of, paid

$52 for it, and that a small part of it was missing. The principal objection urged is as to the competency of the testimony of the owner as to the price he paid and the amount of wear of the harness, and to his opinion of the value based thereon. We think that the amount that the harness cost when purchased in the regular course of trade a short time previous to the theft and the amount of wear that it had received were proper elements to be considered by the jury in fixing the value. It is shown that the opinion of the witness was based upon these elements. Having before it the facts upon which the witnesses' estimate of value was based, we cannot see wherein the accused was prejudiced in this regard. A number of other witnesses were examined upon both sides of this question, and we think there is no prejudicial error in this regard.

Complaint is also made as to the giving of certain instructions. The imperfections in these instructions have been repeatedly pointed out by this court and they should not have been given, but under the condition of the record we cannot perceive wherein the defendant was prejudiced by their having been given.

A number of other errors assigned have been considered and disposed of by this court in the case of *Lukehart v. State, ante,* p. 219, a companion case to the facts in this case, and will not be again reviewed.

Finding no prejudicial error in the record, the judgment of the district court is

AFFIRMED.

HAMER, J., dissenting.

It is said in the majority opinion: "Complaint is also made as to the giving of certain instructions. The imperfections in these instructions have been repeatedly pointed out by this court and they should not have been given, but under the condition of the record we cannot perceive wherein the defendant was prejudiced by their having been given." The instructions complained of are as follows:

"No. 15. The rule which clothes every one accused of crime with the presumption of innocence, and imposes upon the state the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid any one who is in fact guilty to escape, but is a humane provision of the law, intended, so far as human agencies can, to guard against the danger of any innocent person being unjustly punished. A doubt, to justify an acquittal, must be reasonable, and it must arise from a candid and impartial investigation of all the evidence in the case; and unless it is such that, were the same kind of a doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to pause, it is (in)sufficient to authorize a verdict of not guilty. If, after considering all the evidence, you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt.

"No. 16. The court instructs the jury, as a matter of law, that the doubt which a juror is allowed to retain in his mind, and under which he should frame his verdict of not guilty, must always be a reasonable one. A doubt produced by undue sensibility in the mind of a juror, in view of the consequence of his verdict, is not a reasonable doubt, and a juror is not allowed to create sources of doubt by resorting to trivial and fanciful suppositions, and remote conjectures, as to a possible state of facts differing from that established by the evidence. You are not at liberty to disbelieve as jurors if from the evidence you believe as men. Your oath imposes upon you no obligation to doubt where no doubt would exist if no such oath had been administered. You are instructed that if, after a careful, impartial consideration of all the evidence in the case, you can say and feel that you have an abiding conviction of the guilt of the defendant, and are fully satisfied to a moral certainty of the truth of the charge made against him, then you are satisfied beyond a reasonable doubt."

It is true that the above instructions have been con-

demned by this court, but this condemnation has been very tardy in coming, and it does not seem to the writer to be in active operation yet. As late as *Leisenberg v. State,* 60 Neb. 628, delivered at the September term, 1900, this court said of two of the most objectionable sentences in the instructions referred to: "This instruction has never, to our knowledge, received judicial condemnation; on the contrary, it was considered and distinctly approved in *Willis v. State,* 43 Neb. 102, and *Barney v. State,* 49 Neb. 515." The objectionable sentences are: "You are not at liberty to disbelieve as jurors if from all the evidence you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered."

In *Willis v. State, supra,* Judge RAGAN, Commissioner, delivered the opinion of the court. A comparison of paragraphs 15 and 16 of the instructions in the instant case shows that the language used is almost identical with the language used in the instructions of the court in the very noted case of *Spies v. People,* 122 Ill. 1. This is what is known as the anarchist case. It covers pages 1 to 267, inclusive. On page 82 of the report are the two original instructions from which the above instructions in this case are taken. For the convenience of the reader we reproduce them here:

"12. The court instructs the jury, as a matter of law, that in considering the case the jury are not to go beyond the evidence to hunt up doubts, nor must they entertain such doubts as are merely chimerical or conjectural. A doubt, to justify an acquittal, must be reasonable, and it must arise from a candid and impartial investigation of all the evidence in the case; and unless it is such that, were the same kind of doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to hesitate and pause, it is insufficient to authorize a verdict of not guilty. If, after considering all the evidence, you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt.

"13.  The court further instructs the jury, as a matter of law, that the doubt which the juror is allowed to retain on his own mind, and under the influence of which he should frame a verdict of not guilty, must always be a reasonable one.  A doubt produced by undue sensibility in the mind of any juror, in view of the consequences of his verdict, is not a reasonable doubt, and a juror is not allowed to create sources or materials of doubt by resorting to trivial and fanciful suppositions and remote conjectures as to possible states of fact differing from that established by the evidence.  You are not at liberty to disbelieve as jurors, if, from the evidence, you believe as men.  Your oath imposes on you no obligation to doubt, where no doubt would exist if no oath had been administered."

In *Barney v. State*, 49 Neb. 515, this court follows the instructions above given in the *Spies* case.  The opinion was delivered by Commissioner IRVINE, and is unanimous.  A comparison of the instruction used in that case with the instruction used in the *Spies* case will show that the language used is almost identical, except that in the *Spies* case there were two instructions and in *Barney v. State* it seems to be all put in one instruction.  Judge IRVINE wrote an elaborate argument justifying the use of the instruction.

What I object to is that, while this court has finally come around to that point where it condemns the instruction, it does not condemn it in any practical way so as to do the prisoner any good.  What difference does it make to the prisoner if the reviewing court says it condemns the instruction as improper, but refuses to reverse the case and leaves the prisoner in the penitentiary?  I am looking for a practical condemnation of the instruction that will reverse a case and give the defendant a new trial *because he has been prejudiced by the giving of the instruction*.  This court says the instruction is wrong and it ought not to be given; then, in effect, it says, we cannot reverse a case simply because the trial judge has given

improper instructions to the jury which probably convicted him. It is true that this court has announced the fact that an instruction of that kind is wrong, and some time or other, no one may tell when, it is likely to announce that the case is reversed because this instruction has been used. This instruction is either right or wrong. This court has no right to say that we reserve to ourselves the right to say *when* we will reverse a case because this instruction is objectionable. This sort of treatment of the rights of men who are charged with a crime, and their counsel, leaves everybody in the dark. The exercise or nonexercise of the power to reverse the case becomes arbitrary and despotic, and leaves to the will of the judges who sit as the reviewing court to say that in one case the judgment ought to be set aside, and in another case that it ought to stand, although the language in the instruction is just the same. The truth about the matter is that, whenever a trial judge wants to convict, he will use this condemned instruction, with a feeling that, no difference if he has done so and the man has been wrongfully convicted under an instruction which this court has condemned, yet, nevertheless, this court will never reverse the case. If the instruction used in A's case is condemned and A is left in the penitentiary, and in B's case nothing is said about the instruction and B is left in the penitentiary, what is the difference between A and B so far as any good either has received from this court?

In the hope that this court will exercise the power which is given to it and will proceed to lay down some sort of a rule for the guidance and control of the district judges, I want to briefly discuss the instructions used. I want to say of the instruction in the *Spies* case that we are beginning to be far enough away from that case to exercise a little of that calm and dispassionate judgment which history will ultimately record. That case originated in Chicago where the people believed that their lives and property were in danger from an organization known as the anarchists. The men arrested and tried were tried

in the heat of passion. Some of them were defended by lawyers who justified anarchy more than they defended their clients. The Spies instruction would probably have not originated, except because of the peculiar circumstances. There was a fight between the anarchists in Chicago on the one side and the people on the other side. An instruction that an oath of a juror imposes upon him no obligation to doubt where no doubt would exist if no oath had been administered belittles the effect of taking the oath and is an attempt to do away with its influence. *State v. Ruby,* 61 Ia. 86; *Siberry v. State,* 133 Ind. 677. The effect of the instruction is to say to the juryman: "If you have any doubts you do not need to let them trouble you." The language used is an invitation to disregard the evidence. It tells the juryman that he may give expression to his belief as he might have it as a man and without acting as a juror; in other words, that he can express his belief about the matter just as he might express his belief about any bit of neighborhood gosssip that he might hear. That part of the instruction in the instant case which tells the juryman that the instruction "is not intended to aid any one who is in fact guilty to escape," and also says, "a doubt, to justify an acquittal, must be reasonable," assumes that the juror is looking for something that is not in the case. It assumes that he is looking for a state of facts differing from those established by the evidence. The juror is a sworn officer of the law. He is selected generally because he is a well-known and prominent citizen whose business ability and superior intelligence commend him to the position which he is selected to fill. That an American judge should assume in a trial that the juror selected by a system provided by law would seek to shirk his duties, and that he would refuse to discharge them, and that he would need to be reminded of his inferiority and his tendency to go wrong is surpassingly strange. It is un-American and undemocratic. Such a course is deserving of unmeasured censure and condemnation and a

reversal. No juror should be urged "to justify an acquittal." That sort of a thing is scolding him in advance. Perhaps the members of this court have reasoned the matter out and know better than I do that it is all wrong, because they have condemned it, but their condemnation is utterly futile and brings nothing. This court ought to reverse this case, and until it does reverse a case where this instruction is used, and for that reason alone, there will be no attention paid to it by the trial judges who seek conviction and who are willing to ignore this court. It is no part of the duty of the judges to determine the guilt of the accused in the first place. The judges of the trial court are charged with the duty of giving proper instructions to the jury so that the jury may intelligently determine the questions of fact involved. It would seem that this court assumes to itself the right to determine *when* the anarchist instruction may be given without injury. This cannot be. There is always injury whenever the court talks to the jury about giving a reason for justifying an acquittal, or whenever the court talks to the jury about the doctrine of reasonable doubt being applicable to one case, the case of the innocent man, and not applicable elsewhere. Unfortunately this court in its treatment of the cases seems to assume the right to be as arbitrary as these district judges who refuse to be bound by the instructions which this court gives them from the bench. I do not clearly see the difference if the result is that the trial judge by giving this vicious anarchist instruction puts the defendant in the penitentiary and this court leaves him there, although it *says* the instruction is wrong.

In the case of *Bartels v. State,* p. 575, *post,* this court has decided the principal part of the first instruction given in this case to be prejudicially erroneous. The syllabus is: "An instruction in a criminal prosecution that the rule that requires proof of guilt beyond a reasonable doubt 'is not intended to aid any one who is in fact guilty to escape,' and which intimates that an acquittal

must be justified and a verdict of not guilty must be 'authorized,' is erroneous. In the condition of this record, it is found to be prejudicially erroneous." The point in the syllabus is right so far as it holds that the doctrine of reasonable doubt is intended only for innocent persons, and is not intended to aid any one that is in fact guilty, because it condemns that language. It is also right so far as it condemns the use of the language "that an acquittal must be justified and a verdict of not guilty must be 'authorized.'" The thing that is wrong with the syllabus is that it reserves to this court to say when and in what case the *same language* is prejudicial, and when it is not. It seems to be this way: This court says we will let the defendant go when we want to, and we will hold him when we like, and we will give no reason to anybody for it, because we do not have to. This is seemingly an esoteric condition.

In *Brown v. State*, 88 Neb. 411, the language used in the first paragraph of the second instruction is held to be prejudicially erroneous and the case is reversed, but there is in the syllabus and in the body of the opinion the reservation of the alleged right of this court to apply the *evanescent* rule that we will when we like and we won't when we do not want to. In *Blue v. State*, 86 Neb. 189, this court condemned so much of the language used in the first paragraph of the instructions in the instant case as compels the jury to have a reason for justifying an acquittal or to authorize a verdict of not guilty, and it held the language prejudicial and reversed the case, citing many authorities which condemn the language used in vigorous terms. Judge SEDGWICK delivered the opinion of this court in each of the two cases last cited.

In *Flege v. State*, 90 Neb. 390, this court condemned the instructions on reasonable doubt. The two instructions are quoted. The first paragraph of the second one quoted in the instant case is almost identical with the first paragraph of the twenty-fifth instruction in the *Flege* case, and the twenty-fourth instruction in the *Flege*

case is very like the fifteenth instruction in this case. The writer of the opinion in the *Flege* case, Judge SEDGWICK, emphasizes the condemnation of the twenty-fourth instruction in that case by saying: "A jury in such a case ought not to be told that they must 'justify an acquittal' or that they must find something in the case 'to authorize a verdict of not guilty.'" While Judge SEDGWICK finds the language used in that instruction "so prejudicial as to require a reversal," he says: "The majority of this court, however, considers that instruction No. 24 is not prejudicially erroneous in this case." Here is again the reiteration of this court that it refuses to declare any tangible rule for its own government. The rule is no rule because it is as uncertain and as unfindable as a jack-o'-lantern in a swamp, and still this court has made progress since the opinions first above cited were written.