STATE OF NEBRASKA, APPELLEE, v. GEORGE D. SWINEY ET AL., APPELLANTS.

137 N. W. 2d 808

Filed November 5, 1965. No. 35937.

Leonard Dunker, William L. Walker, and Earl Ludlam, for appellants.

Clarence A. H. Meyer, Attorney General, and Richard H. Williams, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BOSLAUGH, J.

The defendants, George D. Swiney and Loren Swiney, were convicted of child stealing in violation of section 28-418, R. R. S. 1943, and sentenced to imprisonment in the Nebraska Penal and Correctional Complex. Their motions for new trial were overruled and they have appealed to this court.

The information alleged that the defendants, on or about August 31, 1963, in Platte County, Nebraska, forcibly took and carried away Kathlene Teske, Stanley Teske, Dennis Teske, and Denise Teske, all minors under the age of 18 years, with the intent unlawfully to detain or conceal said children from Carol Brinkman, the mother and person having legal custody of them.

George D. Swiney is the pastor of the Bible Baptist Church in Columbus, Nebraska. Loren Swiney is a son of George D. Swiney. For convenience in this opinion, George D. Swiney will be referred to as Reverend Swiney and Loren Swiney as Loren.

The Teske children referred to in the information are children of Carol Brinkman by a former marriage. The care, custody, and control of these children were awarded to her by a judgment in a divorce action in the circuit court for Clackamas County, Oregon. Subsequent to the divorce, Carol married Harold Brinkman who is her present husband. Harold Brinkman did not adopt the Teske children and has no legal right to their care, custody, or control except through Carol Brinkman.

The defendants' principal assignment of error relates to the alleged insufficiency of the evidence to sustain

the verdict and judgment. In determining the sufficiency of the evidence to sustain the conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. State v. Snell, 177 Neb. 396, 128 N. W. 2d 823. This court will not interfere with a verdict of guilty which is based on conflicting evidence unless the evidence is so lacking in probative force that it is insufficient as a matter of law to support a finding of guilt beyond a reasonable doubt. State v. Brown, 174 Neb. 387, 118 N. W. 2d 328.

There is evidence in this case from which the jury could find that on August 31, 1963, Carol Brinkman and Harold Brinkman and their family returned to Columbus, Nebraska, from a trip to Oregon. Later that day some difficulty developed between Carol and Harold concerning his refusal to go to a grocery store with her. Carol related this difficulty to Twila Teske, a friend of hers, and Twila notified Loren that the Brinkmans were having difficulty and should be helped.

Twila Teske was Harold Brinkman's first wife, and is now married to Melvin Teske, Carol Brinkman's first husband. The record indicates that Melvin Teske, Twila's present husband, is now living in Oregon.

Between 8:30 and 9 p. m., Loren called Harold Brinkman and asked if he could come to the Brinkman home and talk with him. Shortly thereafter, Reverend Swiney and Loren came to the Brinkman home and talked with Carol and Harold. The conversation included a discussion of the Brinkman's financial problems, their purchase of an automobile, Carol's attitude toward the church while on the Oregon trip, whether it was proper for Carol's daughters to wear slacks or tights, and the reading of some scriptures from the Bible by Reverend Swiney. Twila Teske came to the Brinkman home and was present during the conversation. Several members of the Bible Baptist Church including two of Reverend

Swiney's children came to the Brinkman home while the conversation was taking place.

When Carol did not agree with Reverend Swiney, he raised his voice, stated that "Somebody here isn't saved," or words to that effect, and pounded the coffee table with his fist. Carol said that she didn't have to listen to this, left the room, and walked outdoors. While outside the house she heard Reverend Swiney tell Harold to get the children. Loren then went to the basement to awaken the children who slept there, and Harold went upstairs where the other children slept. Carol re-entered the house by the back door just as Harold was coming down the stairs with Jeff Brinkman, their youngest child. She tried to get Jeff away from Harold but he turned his back, handed Jeff to Reverend Swiney who in turn handed Jeff to Mrs. Peterson. Mrs. Peterson is Harold Brinkman's mother and lived in the Brinkman home.

When all of the children were present, the defendants and Harold asked the Teske children whether they wanted to go with their "daddy" or their mother. Carol attempted to get to the telephone to call the police. Loren pushed her away from the phone several times and Reverend Swiney told him to yank the phone off the wall if Carol tried to get to the phone.

During this time all of the children except Melvin Teske left the house. Carol went outside and found that they were in Twila Teske's automobile with Mrs. Peterson. Carol attempted to open the car door but was pushed away by Loren. Loren admits that he pushed the door shut and pushed her hand off the door handle, but testified that he did this because he was afraid Carol would harm Mrs. Peterson.

Twila Teske came out of the house, got in her car, and drove away with the children. Reverend Swiney and Loren went back into the Brinkman house. One of the persons present said that it would not be necessary to stay and guard Carol any longer because the children were gone.

When everyone except Carol and Melvin Teske had left the Brinkman home, Carol called the police and reported what had happened. Later that evening she went to the police station, signed a complaint against the defendants and Harold, and a warrant was issued.

When Twila Teske left the Brinkman home she took the children to her home. Reverend Swiney and Loren came to the Teske home where Reverend Swiney said to hurry and take the children to "Danny's" before the police knew where they were. Twila then took the children to the Daniel Armstrong home near Columbus where they remained until September 2, 1963.

On September 1, 1963, Reverend Swiney and Loren were arrested, taken before the county judge, and released on bond. On the same day Harold Brinkman and Reverend Swiney had a conversation at the Armstrong home concerning what should be done with the children. They decided that the four Teske children should be returned but that Harold would keep the two Brinkman children with him. At about 7 p. m. that day, Reverend Swiney talked to the sheriff of Platte County, Nebraska, at the sheriff's home. Reverend Swiney wanted to know if he would be charged with kidnapping if the Teske children were returned. The sheriff replied that it was a legal question which he could not answer. Reverend Swiney did not say that he knew where the Teske children were.

On the afternoon of September 2, 1963, Harold Brinkman left the Armstrong home and took the Brinkman children to the Doyle Tucker farm near Lindsay, Nebraska. He had no funds at that time except $15 which Reverend Swiney had given him.

On the same day, Reverend Swiney told his son, George W. Swiney, to take the Teske children from the Armstrong home to Columbus, Nebraska, and release them close to town. At about 8 p. m., the Teske children were returned to Columbus, Nebraska, and released at a point about 5 blocks from their home.

From the Tucker farm, Harold Brinkman went to the Wilgocki farm near Elgin, Nebraska, and then to a motel at Sioux Falls, South Dakota. On the following day, Reverend Swiney came to the motel and talked with Harold. They decided that Harold should go to Atlantic, Iowa, where another member of the church, Lawrence Hassebrook, was living under an assumed name. Reverend Swiney then took Harold Brinkman and the two Brinkman children to the Lawrence Hassebrook home in Atlantic, Iowa, where Hassebrook was living with his daughter, Janet, under the name of Hansen.

Katherine Hassebrook testified that she was married to Lawrence Hassebrook in 1945; that Lawrence was a member of the Bible Baptist Church but that she was not; that in 1958 she commenced having discussions with Reverend Swiney concerning religious matters; that they had differences of opinion concerning religious matters; that Reverend Swiney told Lawrence that Mrs. Hassebrook was a devil and not a fit mother for her children; that in 1959, Mrs. Hassebrook filed a suit for divorce; that on Mother's Day in 1959, while the divorce action was pending, the family was planning to attend church together; that Lawrence took Janet to the church first and Mrs. Hassebrook understood that they would be right back; that they did not return and she did not see Janet again or know where Janet or Lawrence Hassebrook were until November 1963.

The record does not show how long Harold Brinkman stayed in Atlantic, Iowa, or where he went when he left there except that he went to California. In October 1963, Harold Brinkman called Carol several times in an effort to effect a reconciliation. They agreed to meet near Grand Island, Nebraska. Carol then notified the authorities and on November 2, 1963, Harold was arrested on the complaint that had been filed on August 31, 1963.

Carol Brinkman and Harold Brinkman have since

become reconciled and are now living in Oregon with their children.

The record in this case shows by both direct and circumstantial evidence that the defendants forcibly took and carried away the four Teske children with the intent unlawfully to detain or conceal them from their mother who had their legal custody. Although much of the testimony offered by the State was denied by the defendants or contradicted by other witnesses produced by them, there is sufficient evidence to sustain the findings of guilt. It was the province of the jury to resolve the conflicts in the testimony, determine the credibility of the witnesses, and weigh the evidence. The assignments of error relating to the alleged insufficiency of the evidence are without merit.

The defendants contend that the trial court should have instructed the jury in reference to section 28-201, R. R. S. 1943, which provides that whoever aids, abets, or procures another to commit any offense may be prosecuted and punished as if he were the principal offender. Any person who is present at the place of the crime, aiding and assisting in the commission of the crime, is a principal. Puckett v. State, 144 Neb. 876, 15 N. W. 2d 63; Hill v. State, 42 Neb. 503, 60 N. W. 916. The evidence in this case shows that the defendants were present at the place of the crime and participated in it as principals. Consequently, the trial court was not required to instruct the jury in reference to accessories before the fact.

The defendants further contend that the trial court erred in permitting the State to introduce evidence of other similar crimes. Specifically, the defendants complain as to the testimony of Harold Brinkman and Katherine Hassebrook concerning Reverend Swiney's knowledge and participation in the concealment of Janet Hassebrook who was living with her father under an assumed name in Atlantic, Iowa.

In this case the State was required to prove that the

children were forcibly taken or carried away by the defendants with intent unlawfully to detain or conceal the children from their parent. A specific intent was an essential element of the offense. Evidence of other similar acts and offenses is admissible where an element of the crime charged is motive, criminal intent, or guilty knowledge. Sall v. State, 157 Neb. 688, 61 N. W. 2d 256; Turpit v. State, 154 Neb. 385, 48 N. W. 2d 83. In the Turpit case this court quoted with approval the following statement from I Wharton's Criminal Evidence (11th ed.), § 350, p. 520: " 'Testimony of other similar offenses has been admitted to show intent where there is or may be, from the evidence, an inference of mistake, accident, want of guilty knowledge, lawful purpose, or innocent intent. Where an act is equivocal in its nature, and may be criminal or honest according to the intent with which it is done, then other acts of the defendant, and his conduct on other occasions, may be shown in order to disclose the mastering purpose of the alleged criminal act.' "

The evidence concerning the Hassebrook child was admissible in this case as tending to prove the criminal intent of the defendant Reverend Swiney when he participated in the forcible taking and carrying away of the Teske children. By instruction No. 15 the trial court advised the jury that the evidence could be considered for that purpose only and adequately protected the rights of the defendants in that regard.

Both Harold Brinkman and Carol Brinkman testified as witnesses for the State. Harold Brinkman was named as a defendant in the complaint filed in the county court on August 31, 1963, but was not included as a defendant in the information filed in the district court. In the district court, Harold Brinkman specifically waived any privilege that he may have had to prevent his wife from testifying against the defendants. The defendants contend that this was error and that Carol Brinkman should not have been allowed to testify against them.

The prohibition against a wife testifying against a husband is contained in section 25-1203, R. R. S. 1943. Section 25-1207, R. R. S. 1943, provides in part: "The prohibitions of the preceding sections do not apply to cases where the party in whose favor the respective provisions are enacted, waives the rights thereby conferred." If any privilege existed in this case, it is clear that it was waived by Harold Brinkman. The privilege was personal to Harold and did not exist for the benefit of the defendants. See VIII Wigmore on Evidence (McNaughton Rev.), § 2242, p. 256.

The defendants contend that instructions Nos. 8, 9, and 17 given to the jury were erroneous. Although there was only one exhibit admitted in evidence, in instruction No. 8 the trial court referred to the "exhibits." In instruction No. 9 the trial court referred to both defendants by name and later used the pronoun "he" instead of "they." There was no prejudicial error in these instructions. An instruction will not be held erroneous because of a mere typographical error which cannot reasonably be said to have confused or misled the jury to the prejudice of the party complaining. Kaufman v. State, 112 Neb. 718, 200 N. W. 998.

Instruction No. 17 advised the jury that the testimony of a defendant is to be considered as that of any other witness, taking into consideration his interest in the result of the trial, his manner, the probability of the testimony, and giving it such weight as it is entitled to receive under the circumstances. Similar instructions were approved in Darwin v. State, 107 Neb. 177, 185 N. W. 312, and Davis v. State, 171 Neb. 333, 106 N. W. 2d 490.

The penalty for violation of section 28-418, R. R. S. 1943, is imprisonment for not more than 20 years nor less than 1 year. Reverend Swiney was sentenced to imprisonment for a term of 18 months to 3 years. Loren Swiney was sentenced to imprisonment for 1 year. The defendants contend that the sentences are excessive and

that the defendants should have been placed upon probation.

It is a matter within the discretion of the trial court whether the defendant in a particular case should be sentenced or placed upon probation. The sentences imposed are within the maximum and minimum limits prescribed by the Legislature. In the absence of the showing of an abuse of discretion, this court will not disturb a sentence imposed within the limits prescribed by the statute. State v. Ohler, 177 Neb. 418, 129 N. W. 2d 116. There is nothing in this record to show an abuse of discretion by the trial court.

The right of parents to the care, custody, service, and companionship of their minor children is well recognized. One purpose of the statute is to prevent third persons from interfering with this relationship. Those who choose to disregard the law must bear the responsibility for their conduct. The record in this case amply sustains the action of the trial court.

The judgment of the district court is affirmed.

AFFIRMED.