STATE OF NEBRASKA, APPELLEE, V. JOHN R. RUSH, APPELLANT.

275 N. W. 2d 834

Filed February 27, 1979. No. 42075.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellee.

Heard before KRIVOSHA, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

Defendant below, John R. Rush, was charged with the offense of receiving or buying stolen property of a value of $100 or upwards, under section 28-508, R. R. S. 1943. Following a trial by jury he was convicted and sentenced to a term of 2 to 4 years in the Nebraska Penal and Correctional Complex. He ap-

peals his conviction to this court, assigning as error: (1) That the evidence was insufficient as a matter of law to support the verdict of guilt; (2) that the District Court committed reversible error in allowing into evidence the testimony of Mrs. Newsome concerning the value of the property, she being the owner thereof; and (3) that the District Court committed reversible error in failing to grant a mistrial because of alleged misconduct of the prosecutor in trying to implicate the defendant in prior similar crimes. We affirm.

Defendant's assignments (1) and (2) are interrelated and in reality pertain to the same claim of error. Defendant correctly contends that an essential element of the crime with which the defendant was charged is that the goods in question have a value of $100 or greater. Defendant asserts, in this case, the evidence was insufficient to support the necessary value. Section 28-508, R. R. S. 1943, provides: "Whoever receives or buys any goods or chattels of the value of one hundred dollars, or upwards, that have been stolen or taken by robbers, with intent to defraud the owner, * * * shall, upon conviction thereof, be imprisoned in the Nebraska Penal and Correctional Complex not more than seven years nor less than one year." The testimony as to the value of the color television set allegedly stolen from the owner, Mrs. Newsome, and pawned at Mid-City Jewelry and Loan in Omaha, Nebraska, was presented by the witnesses, Mrs. Newsome and Mr. Kaiman, the manager of the pawnshop. Mrs. Newsome testified as to the theft of the color television set from her apartment, her later redemption of the set from the pawnshop, after her notification of its whereabouts by the Omaha police, and her subsequent identification of the set. Her testimony with regard to value was as follows: "Q. When and where did you buy this TV, Mrs. Newsome? A. Sol Lewis on 72nd. Q. When did you buy it? A. About

February 2nd, 3rd, somewhere in there. Q. Of 1977? A. '77, right. Q. Do you recall what you paid for it? * * * THE WITNESS: Four hundred twenty-four dollars. Q. (Mr. Brown) What condition was the TV in at the time it was stolen? A. It was good condition. It was a brand new TV. Q. Do you have an opinion as to the fair market value in Omaha of that TV on — MR. RILEY: I am going to have to object. There is absolutely no foundation for that, Your Honor. THE COURT: You owned the television, did you not? THE WITNESS: Yes." Defendant's attorney then inquired as to whether she was engaged in the practice of selling televisions and stereos and she answered no to that question, whereupon the counsel for the defendant renewed his objection to the testimony. The objection was overruled, the court stating at the time: "She is the owner of the property. She can testify as to its value." The witness then informed the court she had receipts for its purchase if he would like to have them, but the court replied:

"No. The question is, do you know what the fair market value of the television was on November 8th. Do you have an opinion as to what it was. THE WITNESS: It was the same for me, because it was brand new. There was just no one there but me and my daughter, so it was still in good condition, brand new TV, four hundred bucks. Q. (Mr. Brown) And your opinion would be the same on December 21, 1977, I presume, Mrs. Newsome? A. Yes."

It has long been the established rule in Nebraska that the owner of chattels may testify as to their value in both civil and criminal cases. In Sprague v. Allied Mills, 129 Neb. 394, 261 N. W. 892 (1935), we ruled that an owner of household goods, used for family purposes, is competent to express an opinion concerning its value. An even earlier case, Lambert v. State, 91 Neb. 520, 136 N. W. 720 (1912), involved a defendant who was convicted on the charge of receiving stolen property of the value of $36. In

that case this court stated: "There is another consideration entering into this case which should, perhaps, be noticed. The evidence of the value of the property alleged to have been received took a wide range, extending from $10 or $15 to $45. The jury found the value to be $36. By an oversight of the legislature, possibly, the receiving of stolen property of any less value than $35 is not a crime. The court was, therefore, compelled to instruct the jury that, in order to find the defendant guilty at all, they would have to find the value of the property to be at least $35. It was then for the jury to find that value or acquit. They went one dollar over the mark fixed by law. It is complained that there was no competent testimony as to the value of the harness. It is shown that it was nearly new and had only been used a few times, that the owner of the harness, whose testimony is particularly complained of, paid $52 for it, and that a small part of it was missing. The principal objection urged is as to the competency of the testimony of the owner as to the price he paid and the amount of wear of the harness, and to his opinion of the value based thereon. We think that the amount that the harness cost when purchased in the regular course of trade a short time previous to the theft and the amount of wear that it had received were proper elements to be considered by the jury in fixing the value. It is shown that the opinion of the witness was based upon these elements. Having before it the facts upon which the witnesses' estimate of value was based, we cannot see wherein the accused was prejudiced in this regard. A number of other witnesses were examined upon both sides of this question, and we think there is no prejudicial error in this regard."

We think Mrs. Newsome, as the owner of the television set, was clearly competent to testify as to the value of her own household goods, and it is clear that from her testimony alone there was sufficient evi-

dence for the jury to find the value of the property received and pawned by the defendant was in excess of the $100 value referred to in the statute defining the crime. It should also be noted that Mrs. Newsome testified $400 was the fair market value of the television, and was nearly what she paid for the set which she described as brand new.

The other testimony as to the value of the television in question was presented by the manager of the pawnshop, Mr. Kaiman. He testified generally as to his experience in buying, selling, and receiving in pawn various makes and models of television sets, and was then asked the question on direct examination: "Do you have an opinion of the fair market value in Omaha of that MGA TV set that you took in pawn on December 21, 1977 shown on Exhibit No. 4?" He replied: "It would be in the one hundred twenty-five to one hundred fifty dollar area." On cross-examination he was asked by counsel for the defendant as to whether that figure included profit. He replied: "Yes." He was then asked: "How much profit?" Counsel for the State objected to the question on the ground of relevancy, and the court replied: "Well, he answered your question, I think. It includes profit." The court then sustained the objection of the attorney for the State to the question of the defendant as to the amount of profit included in the opinion of the value of the set expressed by the manager of the pawnshop. It should be added, however, that the evidence in the record reflects Mr. Kaiman loaned only the amount of $80 on the set. It does not follow, however, that that figure represented the market value of the television set. Even assuming Mr. Kaiman's opinion as to the market value of the television set might be considered somewhat ambiguous and of doubtful validity because of the absence of evidence as to the amount of the profit included in his estimate of $125 to $150, it must be remembered that the question of value

was a question of fact for the determination of the jury. In Spreitzer v. State, 155 Neb. 70, 50 N. W. 2d 516 (1951), the jury was faced with conflicting testimony as to the value of the goods which were stolen, one witness placing the value over the statutory minimum and another testifying to a value below such minimum. In refusing to set aside the jury's verdict as to the value, this court said it is for the jury to resolve conflicts in the evidence and pass on the credibility of the witnesses.

In the instant case, the jury had before it not only the testimony of the owner, Mrs. Newsome, that the fair market value of the television was $400, but also the testimony of Mr. Kaiman, although somewhat indefinite in nature, that the market value of the television set was between $125 and $150, but that there was an element of profit included in those figures in an unspecified amount. The court in instructing the jury stated one of the material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the defendant was "That said goods and chattels had a value of one hundred dollars or upwards at the time they were received or bought by the defendant; * * *." The court also instructed the jury that " 'value' means the fair market value of the goods and chattels in question at the time and place of the alleged crime." The court also instructed the jury it was not necessary for them to determine a specific fair market value but only that the fair market value of the item or items at the time in question was at least $100. By bringing back a verdict of guilt against the defendant in this case, it is clear, in view of the foregoing instructions, the jury found the value of the television set to be at least $100. We conclude there is sufficient evidence in the record to support the verdict in that regard.

The defendant also claims the District Court committed reversible error in failing to grant a mistrial

because of misconduct of the prosecutor in trying to implicate the defendant in prior similar crimes. It appears the prosecutor asked the defendant on cross-examination: "Have you ever had any other experiences with stolen property?" The court sustained the defendant's objection to the question. The prosecutor informed the court the defendant was offering the defense of lack of knowledge and mistake or accident and that the State was inquiring with respect to his experience, knowledge, and intent in connection with the case. The prosecutor then asked: "John, did you ever sell any article to another party and then find out that the article had been stolen?" The defendant objected again and the court sustained the objection, following which a hearing was held out of the presence of the jury. At the hearing, the defendant moved for a mistrial because of the prosecutor's questions with reference to prior criminal activity on the part of the defendant claiming the questions obviously drew inferences as to the character of the defendant "which I think prejudices him in front of the jury, * * *." At that point the court stated: "Before I rule on this, I think perhaps the State should make an offer of proof as to what the answers would be to these questions if the court allowed them to be asked." The prosecutor indicated to the court that he had a report from a police officer indicating the defendant told him he had purchased a motorcycle not knowing it was stolen, but later found out it was stolen and subsequently attempted to sell the motorcycle to another party knowing it was stolen; and, also, that he, the prosecutor, would have evidence that in March of 1976, the defendant sold a CB radio stolen from a Brandeis store to another party with the explanation he did not know it was stolen at the time he bought it or sold it but subsequently found out it was stolen; and third, that the defendant participated in the burglary of Dominican High School and led the police

to where the property stolen from Dominican was supposedly located, which property was not there. This event occurred on April 15, 1976. At that time, the prosecutor also informed the court: "I am not offering them to show his character or to show that he was convicted of prior offenses but merely because the test of guilty knowledge is if a person of his age, intelligence, education and experience, would know, then the State has met its burden, and I am merely showing that he has had numerous, at least three, exposures to the police in connection with stolen property and therefore does have experience and knowledge and lack of mistake in connection with this case." After further argument, the court stated: "I think it's awful close to being on the idea of absence of mistake or accident. * * * I think that it might well be pertinent in the idea of absence of mistake and accident or knowledge, intent, but especially in view of the fact one of them is two years old or thereabouts, one of them is pending — * * * Well, in any event, I am going to rule that they be excluded. On the other hand, I think they're close enough to it that I really can't feel that there is any damage to the Defendant at this point sufficient to grant a mistrial, and so I am going to kind of rule both ways. Mistrial is denied. However, I am now going to admonish you that I will not allow anything along this line in. You have made your offer of proof. And so you are now directed not to."

It is clear from the record itself that although the prosecutor did ask two preliminary questions leading up to the introduction of the specific incidents to which he referred, the court did not allow the testimony of the specific incidents to be introduced into evidence, although it appears he might properly have done so. Section 27-404 (2), R. R. S. 1943, provides as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, *or absence of mistake or accident.*" (Emphasis supplied.) In State v. Swiney, 179 Neb. 230, 137 N. W. 2d 808 (1965), a case antedating the Nebraska Evidence Code, we held that evidence of similar acts and offenses is admissible where an element of a crime charged is motive, criminal intent, or guilty knowledge. In that case, quoting from 1 Wharton, Criminal Evidence (11th Ed.), § 350, p. 520, we stated: "Where an act is equivocal in its nature, and may be criminal or honest according to the intent with which it is done, then other acts of the defendant, and his conduct on other occasions, may be shown in order to disclose the mastering purpose of the alleged criminal act." Under the above authorities, there would seem to be little doubt that it would have been proper for the court to admit the proffered testimony relative to the acts of the defendant, at least one of which was within a period of a few months of the incident involved in this case. However, the court did not do so, and we do not believe any prejudice resulted to the defendant from the preliminary questions asked by the prosecutor. The error, if any, was harmless error, and we believe there was more than sufficient evidence to sustain the conviction of the defendant by the jury.

We conclude that defendant's three assignments of error are without merit, and, no other error appearing in the record, the judgment of the lower court must be affirmed.

AFFIRMED.

McCOWN, J., concurs in result.