STATE OF NEBRASKA, APPELLEE, V. GLENN FRENCH,
APPELLANT.
291 N. W. 2d 248

Filed April 15, 1980. No. 42945.

Smith & Wertz and Dwight E. Smith, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Defendant was charged in the District Court for Deuel County, Nebraska, with obtaining property by false pretenses from Calvin McClung on August 8, 9, 10, 11, 12, 15, and 16, 1977. This was a felony offense under the provisions of Neb. Rev. Stat. § 28-1207 (Reissue 1975), the statute then in effect, and, upon conviction, if the value of the property involved was $35 or more, the statute provided for a term of imprisonment in the Nebraska Penal and Correctional Complex of not more than 5 years nor less than 1

year. A jury was waived and a trial to the court alone resulted in a conviction and a sentence of 3½ years. The defendant's motion for a new trial was overruled and he has appealed to this court. Assigned as errors are the following: (1) The trial court erred in admitting evidence of other alleged similar acts; (2) The trial court erred in overruling defendant's motion for a directed verdict; (3) The evidence was not sufficient to sustain the conviction; and (4) The sentence was excessive and should have provided for probation. We affirm.

A person is deemed guilty of this crime if such person "by false pretense or pretenses . . . shall obtain from any other person . . . goods . . . with intent to cheat or defraud such person . . . ." § 28-1207.

Calvin McClung testified he had a conversation with the defendant on July 27, 1977, wherein defendant offered to buy corn for $1.90 per bushel. He told Mr. McClung that he had a contract to sell corn to a feedlot for $1.90 per bushel and that the parties who had promised to sell to him in order that he might be able to fulfill that contract had "backed out" on the deal. At the time, Mr. McClung knew corn was going down in price and was then currently selling on the market for approximately $1.74. Mr. McClung further testified he did, in fact, sell four loads of corn to defendant at the $1.90 price on July 27 and 29 and August 1 and 4, 1977, for which he was paid in full on the following Saturday. He went on to say that he sold to defendant an additional load on August 8, two loads on August 9, and one load on August 10, at the $1.90 price. Thereafter, according to his testimony, Mr. McClung sold four more loads to the defendant on August 11 for an agreed price of $1.75, and five more loads at $1.59, one load on August 12, three on August 15, and one on August 16. The witness thought the market at that time was probably about 5 cents under the last two contract prices. Mr. McClung was only paid a total of $2,000

for the last 13 loads, consisting of approximately 12,696 bushels, whereas the total value or sales price of the same amounted to $22,947.65.

Additionally, Mr. McClung testified that defendant had told him he was bonded and showed him a paper which appeared to be a bond. The witness stated the reason he dealt with defendant was because the price of corn was going down and was lower than the $1.90 offered and he believed defendant's story that he had this contract to fulfill.

We will pass by the testimony of the State's other witnesses for the time being and set forth that of the defendant, offered in his own behalf, in order to more easily compare it with the testimony of Mr. McClung. Defendant admitted all the transactions set forth above and the payments made as well as the failure to make the remaining payments. He said at the time he offered $1.90 per bushel, the feed-lot was bidding $1.74. He explained the reason why he would take such a loss deliberately was that "I committed myself on the corn before I had a commitment on the other end and thought for sure the price would raise and could make a comeback." Defendant explained this more clearly on cross-examination by stating he had commitments to deliver corn to one feedlot at a price of $1.74 per bushel and to another for $1.67 before he purchased any corn from Mr. McClung. He also admitted he had told Mr. McClung, during their conversation about buying the latter's corn, that he had these contracts, but did not believe he told him the contract price. It was also conceded by defendant that he had no grain dealer's bond, but he didn't know if he had told Mr. McClung he was bonded. Defendant acknowledged similar dealings with a Mr. Pickard and Mr. Armstrong, whose testimony will be referred to later on in this opinion, and that altogether he owed these two men, plus Mr. McClung, the sum of $56,409.84. He used the money received from the sale of Mr.

McClung's corn partially for his personal expenses and partially to pay for corn purchased from others, but intended to pay Mr. McClung in full.

Burdette Pickard and Ernest Armstrong both testified in behalf of the State, and it was their testimony that was received over the objections of defendant and which constitutes the basis of defendant's first assignment of error. They are farmers and had dealings with defendant similar to those of Mr. McClung at or near the same time. Mr. Pickard stated that in July of 1977, he sold defendant 5,329 bushels of corn for a contract price of $1.91, received a check for $10,179, then in August sold another 3,955 bushels for $1.71, following which the first check received was returned unpaid. He too was paid but a total of $2,000 for all the corn he sold to defendant. The witness also stated that defendant had told him he was a bonded dealer. Mr. Armstrong testified he was a farmer in the area of Brule, Keith County, Nebraska, and in July of 1977, he sold defendant 12 loads of corn at an average price of $2.20 per bushel which were loaded and hauled by defendant on August 18, 1977. At the same time, according to his testimony, he received a check from defendant in the amount of $22,520.75. Although presented twice for payment, the check was never honored. He said he had received a payment of only $2,000 on the total indebtedness.

As has been mentioned previously, defendant's objections to the testimony of the last two witnesses were overruled, which rulings of the trial court form the basis for defendant's first assignment of error. Neb. Rev. Stat. § 27-404(2) (Reissue 1975) provides, in part, that evidence of other "crimes, wrongs, or acts . . . may . . . be admissible for . . . purposes, such as proof of motive, opportunity, intent, . . . plan, knowledge . . . or absence of mistake or accident." The incidents testified to by these two witnesses certainly were not remote in point of time.

The testimony tended to corroborate the claim by Mr. McClung that defendant had represented to him that he, the defendant, was bonded; it revealed a plan or scheme to obtain property of others without paying for it; and it disclosed the absence of any mistake on the part of defendant as to whether he had or would have the money to cover the checks. In *State v. Rush*, 202 Neb. 425, 275 N.W.2d 834 (1979), although the trial court, in a prosecution for receiving stolen property, excluded evidence that defendant previously had had experience with stolen property, we stated that the court might properly have received it. We went on to point out that under § 27-404(2), such evidence of other acts may be admissible to show the " 'absence of mistake or accident.' " There was no merit to defendant's objections.

The second and third assignments of error may be considered together because if the evidence was sufficient to sustain the trial court's verdict, certainly there was no error in refusing to direct a verdict for the defendant. The essential elements of the crime of obtaining goods by false pretenses are: (1) There must be a false pretense or, in other words, a false representation of a claimed fact; (2) The false pretense must be made with the intent to cheat and defraud the victim; (3) Property of the victim must be obtained because of the false pretense; (4) There must be reliance by the victim upon the false pretense; and (5) The false pretense must be an effective cause in inducing the owner to part with his property. *State v. Bohannon*, 187 Neb. 594, 193 N.W. 2d 153 (1971).

There was evidence offered by the State and not unequivocally denied by the defendant from which the trial court could find, beyond a reasonable doubt, first, that defendant represented to Mr. McClung that he had a contract to sell corn at $1.90 per bushel and that he possessed a valid grain deal-

er's bond. The fact that those representations were false is not disputed. Secondly, the circumstances surrounding all the transactions involving the three sellers support a finding that defendant made those representations with the intent to cheat and defraud the victim. Whether there is an intent on the part of one person to cheat or defraud another usually must be inferred from the nature of the acts themselves and the circumstances surrounding them. *State v. Mills*, 199 Neb. 295, 258 N.W.2d 628 (1977). Finally, the victim, Mr. McClung, testified that the price of corn was well below $1.90 and going down and he believed defendant's story about the contract he had to fulfill at $1.90, and that is the reason he dealt with him and sold him the corn. This would cover the last three elements of the crime as set forth above.

"This court will not interfere on appeal with a conviction based upon evidence unless it is so lacking in probative force that the court can say as a matter of law that it is insufficient to support a verdict of guilt beyond a reasonable doubt." *State v. Sommers,* 201 Neb. 809, 818, 272 N.W.2d 367, 372 (1978). Certainly, on the basis of the record, we cannot reach that conclusion here.

Finally, defendant insists that the trial judge abused his discretion in failing to place defendant on probation. It is true that defendant does not have any substantial criminal record. A felony charge of insufficient funds check was filed against him in Thayer County in March of 1978 but was dismissed upon his payment of restitution and costs. He has a pending felony charge in Garden County for obtaining goods by false pretenses from Burdette Pickard. The trial judge, during the sentencing proceedings, rejected the plea for probation because, in his opinion, it would "bring the law into disrepute and would depreciate the seriousness of the offense . . . ." Neb. Rev. Stat. § 29-2260 (Reissue 1975) allows the trial court to withhold sentence of imprisonment un-

less it finds that imprisonment is necessary for the protection of the public because "(c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law." The trial judge viewed this as a serious matter involving a deliberate scheme to cheat and defraud three area farmers out of more than $50,000. We cannot say that he abused his discretion and this court will not overturn a sentence of the trial court which does not grant probation unless there has been an abuse of discretion. *State v. Swails*, 195 Neb. 406, 238 N.W. 2d 246 (1976). The sentence was actually one for not less than 1 year nor more than 3½ years because of the statutory minimum. A sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion. This sentence was within the statutory limits and evidenced no abuse of discretion on the part of the trial judge.

The judgment is affirmed.

AFFIRMED.

CLINTON, J., not voting.